Tilghman C. ‘J.
gave no opinion, not having heard the argument.
Gibson J.
The defendants contend, that by the act of 1814, the contract was rendered void; and that it was not competent to the legislature to create, by its repeal, anew contract for the parties, which, in point of law, had no previous existence. It certainly never was in the view of the legislature to make a new contract, nor have they done so. The object of the act of 1814, was, among other things, to restrain the circulation of the notes of unlawful banking associations; and for this purpose, such notes are declared void. I think it quite, immaterial, whether the notes are to *360 be considered void, only as a security, or whether the contract also was intended to be avoided, so that no action could in any form, be sustained on it. It is most probable, the latter was intended; for if the holder could recover at all in an action on the contract, by using the notes as the evidence of a debt, his security would in reality be as great, after the passing of the act, as it was before. Certainly the legislature intended to do something more than change the form of action ; which would have been doing nothing. I have always doubted the propriety of the decision, in Robinson v. Bland, 2 Burr. 1077, where this kind of distinction was first started.
There is no force also, in the argument, that the notes being payable to bearer, a new promise arose to the holder, on their being received by him, since the passing of the repealing act. This notion, which is an artificial one, is sustained, where it holds at all, for the sole purpose of giving the holder an action in his own name, without deriving title through the preceding holders, and would, if applied to this case, in reality create a new contract. In contemplation of law, a new promise arises to every subsequent holder of a note, payable to bearer, but such promise is not supposed to have been made, at the time the person became the holder, but at the time of making the note; and it is always so declared on. I will consider the case, therefore, on the broad ground of the contract having been void when made, and of no new contract having arisen, since the repealing act. But by rendering the contract void, it was not annihilated. The object of the act of .1814, was not to vest a right in any unlawful banking association, but directly the reverse. The motive was not to create a privilege, or shield them from the payment of their just debts, but to restrain them from violating the law by destroying the credit of their paper, and punishing those who received it. How then can the defendants complain? As unauthorised bankers, they were violaters of the law; and objects, not of protection, but punishment. The repealing act, was a statutory pardon of the crime committed by the receivers of this illegal medium. Might not the legislature pardon the crime, without consulting those who committed it; or does it lie in the mouth of another culprit, particeps criminis, to object, on the ground of impairing his interest,' in having the punishment inflicted, when that interest arose from a violation of the very law under which he *361 attempts to cover himself? How can the defendants say, there was no contract, when the plaintiff produces their written engagement, for the performance of a duty, binding in conscience, though not inlaw? Although the contract for rea-" sons of policy, was so far void, that an action could not be' sustained on it, yet a moral obligation to perform it, whenever those reasons ceased, remained ; and it would be going very far, to say, the legislature may not add a legal sanction to that obligation, on account of some fancied constitutional restriction.
There can be as little doubt but that the repeal was retrospective. There is no saving; but the terms are general and comprehensive. The provisions of the repealed section, not having been originally designed for the protection of the bankers, what motive could have existed in the mind of the legislature, for a discrimination between notes issued before the repealing act, and those issued after it. I understand the rule to be, that where a statute is repealed, without .any particular saving, it is, as if it never had existed, except as to acts and proceedings, done and perfected, pursuant to it. Rex v. The Justices of London, 3 Burr. 1456. United States v. Passmore, 4 Dall. 372. Here the acts were not done in pursuance of the act of assembly, but in direct opposition to it.
On the case stated, another question arises, attended with more difficulty. By the terms of their notes, the defendants engaged to pay, “ out of their joint funds, according to their articles of association,” and it is made part of the case, that they have no joint funds. Shall they be compelled, to pay out of their separate estates ? It is a general principle, that partners aré liable to third persons, as for a personal debt. It is not merely the stock, they bring into the partnership, that is hazarded; but they are responsible to the extent of their individual fortunes; and such responsibility, cannot be limited, by any proviso in the articles of partnership, or agreement between themselves. ' But I see no reason to doubt,.¡but they may 'limit their responsibility, by an explicit stipulation, made with the party with.whom they , contract, and*clearly understood by him at the time. But this is a stipulation, so unreasonable on the part of the partnership, and affording such facility to the commission of fraud, that unless it appear unequivocally plain, from the terms of the contract, I will never suppose it to have been in *362 the view of the parties. Unless the contrary clearly appeared, I would not suppose any one so imprudent, as to con- ” tract solely on the credit of a fund, exclusively within the controul of another, and of the solvency of which, he could not command the means of obtaining a' knowledge. The management of it, and whether, at the day of payment, it will be sufficient, must necessarily be a secret, known only to the partners themselves. In this case, the supposition of a limited responsibility, would be doubly absurd. The payment was to be made, not only out of the joint funds, but also, “ according to the articles of associationand from an inspection of these, it appears, the company was to pay, only when convenient. The defendants say, the meaning of that .is, they were to pay specie, only when convenient. But that is a distinction, without a difference; for a creditor is bound to accept nothing, but specie; and a payment in any thing else, is no payment at all. This arrangement was a deceit on the public; and though no fraud may have, in fact, been intended, it is still a circumstance of some weight, in the construction of legal intention. In these notes, there is a direct engagement to pay; and the mention of the fund, must be understood, as directing its application as between the partners themselves. Else why refer the mode of payment, to the articles of association, to which the person contracted with, was a stranger, without means of access; and with which‘he had no concern? It does not follow, that every promise, to pay out of a particular fund, is conditional. Whether a fund is mentioned as limiting the claim of the holder, or as only directing the application of the payment between the other parties, is a question of construction, with respect to which every case rests on its own circumstances, M'-Leod v. Snee, 2 Ld. Raym. 1481. Burchellv. Slocock, 2 Ld. Raym. 1545. The absolving of corporators, from personal responsibility, has always a greater or less tendency to fraud. Where there is a divided responsibility to. public opinion, the odium due to misconduct is bandied from one to another, till at length, it rests no where ; and we sometimes see men, do things in a corporate character, which, as individuals, they would blush to be thought capable of. Hence, a necessity of holding them in check by individual interest. Private associations, therefore, attempting to arrogate to themselves, the-attributes of a corporation, are entitled to no indulgence, and *363 more particularly this association, which carried on its operations, in open defiance of the laws of the country. An exemption from individual liability, is the most substantial benefit derived from a' charter; the having perpetual succession, ability to sue, and be sued, corporately, &c. are only matters of convenience, that may be dispensed with. The defendants attempted, if they designed this clause for individual exoneration, to secure to themselves the substantial benefit of a corporate character, in a business forbidden by law, to all but corporate bodies. They have, therefore, no claim to an indulgent construction} and Í am of opinion, the legal meaning of the contract is, that .they are personally liable.
Duncan J.
The questions agreed by the parties to be raised on this record, are, 1st. Whether the notes were evidence, or afford any cause of action to the holder, in any form? and 2dly, If they do, are the defendants liable a? partners, or liable only out of their joint funds, according to the articles of association f
The first is a question stricti juris, and whatever opinion the Court may entertain of the morality of the defence, it cannot influence their judgment on the law. To form a correct judgment on this, it is necessary to consider all the acts of assembly, on the subject of banking associations. By the 11th sect, of the act 28th March, 1808. 4Smith, S36. citizens, or others associating, for the purpose of banking, shall be individually, and personally liable. By the act of 19th March, 1810, 5 Smith, 108. unincorporated banks are not to issue bank notes under a penalty} paying, or receiving such notes, is declared unlawful. By the act of 20th March, 1810, the first section of the act of 28th March, 1808, is repealed, 5 Sm. L. 153. By the act of 21st March, 1814, St. Laws, regulating banks, all unincorporated associations are declared unlawful ; and the issuing of bank notes, by unincorporated banks, is declared unlawful} and all orders, and notes issued after the 1st January, 1815, payable to bearer, or order, in the manner or nature of bank notes, are declared to be absolutely null and void, and to have no effect, either in law or equity, and irrecoverable in any Court. It is under this act, that the defendants claim an exemption, and did it rest on this, there could fee no recovery. But the plaintiff contends, that by *364 the act of 22d March, 1817, this provision is repealed, and such notes are made recoverable, as if they had been lawfully issued. St. Laws, 141. The terms certainly embrace this case, and if the law is constitutional, confer on the plaintiff a legal remedy.
This is not a legislation prohibited in express terms, either by the constitution of the state, or United States; it is neither an ex post facto law, which only relates to criminal matters, crimes, pains, and penalties, nor a law impairing contracts. It removes the impediment to recover on a contract entered into by the defendant. It is so far retrospective; but every retrospective law is not void. In general, retrospective laws divesting vested rights, working the destruction of a right previously attached, are justly reprobated, and seem contrary to the fundamental principles of sound legislation, and the social compact} but every retrospective law, is not void. Every law that is to have an operation before the making thereof, as to commence at an antecedent time, or to save time from the statute of limitations, orto excuse acts which were unlawful, and before committed, and the like, is retrospective ; but such laws may be proper and necessary, as the case may be. There is a great and apparent difference, between making an unlawful act, lawful, and the making an innocent act, criminal, and punishing it as a crime. The meaning of the prohibition is, that the states pass no laws to deprive a citizen of any right vested in him, by existinglaws. Calder v. Bull, 3 Dall. 396. A retrospective law divesting a right in that sense, would be against the constitution of the state, Osborne v. Huger, 1 Bay, 179. Dash v. Van Kluck, 7 Johns. 477.
The defendants claim exemption under the act of 21st March 1814. They say, it is true, we did promise to pay these notes, but this was an unlawful promise; prohibited by law. The plaintiff replies, but the prohibition is taken off, and the law has empowered me to recover from you, that which you promised to pay. The whole system was a matter of policy ; the prohibition was not intended to confer any right on these associations, but merely as a measure of policy, to check a growing evil. This law divests no right, but removes an impediment; it renders lawful, an unlawful act, as if it had been lawful, ab initio; it works no injustice; is the invasion of no man’s rights; it impairs no man’s contract; but *365 takes from the contract the taint, which the policy of the moment imposed, and gives to the holder of the notes, a right to recover on the contract; a right which he would have possessed if there had been no legislative interposition. The interdiction is taken away, and the party is restored to his common law right, and common law remedy, as if the prohibitory act had not been passed. It is therefore evident, to me, that the plaintiff has his remedy on these notes, and that they were legal evidence.
On the second question, the personal responsibility, I know not any power, but that of the legislature, that can create a corporation; yet if these associations can contract debts, without a personal responsibility, payable only out of their joint funds, they possess all the powers and privileges of a corporation; they are quasi a corporate body. What is the judgment to be ? what the execution? Can they be called on to enter special bail? Can their bodies be surrendered? Are they the subjects of execution of the person? On every suit is there to be an inquiry into the amount of their joint' funds, and judgment taken for that amount, a kind of judgment de bonis, or judgment qifando acciderint ? But in the articles of association, is the liability restrained to the joint funds? Is there any article, exempting from responsibility beyond the funds? Art. 11th. “ The debts of the association, shall be promptly discharged out of the joint funds, in current bank notes, unless it shall suit the convenience of the company, to pay specie.” By this article, if it were binding on all who held their paper, no execution could issue but for current bank notes; for no judgment could be for specie; for that they were not bound to pay, unless it was convenient. A stipulation so idle and unmeaning, never can change the general law of the land ; for according to the terms of this stipulation, they could not be reached at all. Current bank notes they might have none, and specie they are not obliged to pay unless it suited their convenience. Though the notes are made payable out of their joint funds, according to the articles of association, yet if their own articles could .restrain the responsibility, they have not so done. An obligation to pay put of funds, where there are nope, would be a fraud on the obligee. Where is the subscription of $ 200,000? Have the instalments been all paid ? This -moonshine fund, this bubble, this bank without a charter, and without stock; for *366 stock they have none, as appears by the record; subscription there is none found. Now the association was not to go into operation, until § 100,000 was subscribed. Their acting before, would be a fraud on all the world. On this ground, I am of opinion, that the defendants, who are found to be partners, under the name and firm, of “ The Farmers’ and Mechanics’ bank, of Fayette county, Pennsylvania,” and who, as appears by the record, issued these notes, are liáble as partners. Nor would I have any difficulty, were the articles of association more explicit than they are, and excluded from responsibility the associators, other than out of their joint funds; for though they might, as between themselves, stipulate with each other, for this contracted responsibility, yet as to the rest of the world, it is clear, that each partner is liable to the whole amount of the debts contracted. For partners in a stock divided into shares, and transferable, (but who are not incorporated,) are responsible beyond the amount of the shares to which they subscribe, though it is one of the terms of the association, they shall not be. 9 East, 527. King v. Dodd. So in Waugh v. Carver, 2 H. Bl. 235, where on articles of partnership it was stipulated between the Carvers and Giesler, that neither of them should be answerable or liable for the acts of the other; but that each shall with his own goods and effects, and in his own person respectively be answerable and accountable for his own losses, acts, deeds and receipts, and that the articles shall not bear reference to iheir particular separate mercantile concerns or connections, the limitation though binding as between the partners, did not restrain their amenability as partners, as to third persons. There may exist a limited partnership, confined to a particular trade or business; there the partners are not bound by the contract of a copartner not connected with such trade or business, entered into with a third person, having notice of the limited nature of the partnership. 2 Johns. 300. Lansing v. Game and another, and 4 Johns. 251. Livingston v. Roosevelt. Here was a limited partnership, for the business of banking; and for all contracts connected with that business the partners are liable. Thus in secret partnerships, though such secret partnership cannot enter into the consideration of the creditor, yet for reasons of policy, and general expedience, the law is positive, with respect to secret partners, that when discover- *367 ed, they shall be liable to the whole extent. In many parts of Europe limited partnerships are allowed, provided they are entered on a register, but such is not the law of England, nor of this country. Coope v. Eyre, 1 H. Bl. 37. Legal corporations are known, can be made responsible by their property, and punished by the forfeiture of their, char ter. The mode of coming at their property is pointed out by law; but here we are without any guide; these self created bodies corporate, would be without any check or controul, did we lose sight of the individuals; was there no individuUl existence.
The numerous chartered banks, with a bonus given for a charter, for a limited period, afford strong evidence of the general opinion both of «.he government who chartered, and of the numerous speculators, who have paid for charters.
I am therefore of opinion, that the judgment be entered generally against the defendants.
Judgment affirmed.