## BABB *against* REED and others, trustees, &c.

### APPEAL.

An association for the purposes of mutual benevolence among its members only, is not an association for charitable uses.

Its members, if not incorporated, are considered as partners in their relations to third persons, and the property of the association must be appropriated to pay the debts of creditors, not members of the association, before it can be applied to the payment of the claims of those who are members.

A mechanic's lien filed by a member of such an association against a building erected by it, is not available as against the liens of others not members.

APPEAL from the decree of the court of Common Pleas of Chester county, distributing money arising from sheriff's sale.

The material facts were as follows:—

About the beginning of the year 1832 a number of individuals in and about West Chester associated under the name of the West Chester Lodge, No. 42, of the independent order of Odd Fellows.

On the 28th day of March, 1832, *Babb* and wife by a deed of that date conveyed a lot of ground in West Chester to the defendants, *Reed* and others, who are styled therein trustees on behalf of West Chester Lodge, No. 42 of the Independent order of Odd Fellows, for the consideration of fifteen hundred and thirty-seven dollars and fifty cents, the whole of which was secured by a mortgage immediately given by the trustees to the vendor. The objects of this purchase are declared by the trusts contained in the deed which are substantially these. For the use of West Chester Lodge, No. 42 of the Independent order of Odd Fellows then established as long as it should exist, and after its dissolution (if it should be dissolved before the property should be disposed of) for the use of any other subsequent Lodge of Odd Fellows which should at any time thereafter be established in West Chester as long as such subsequently established Lodge should continue to exist; provided, that in all vacancies of time between the dissolution of one lodge and the establishment of another, the lot, hall and appurtenances should be for the use of the burgesses and inhabitants of the borough of West Chester for public purposes, they keeping the premises in repair; and provided also, that the trustees should, under the direction of the Lodge No. 42, pledge and mortgage the lot and premises for the payment of debts, or sell and convey the whole of it and apply the proceeds to the payment of the debts of the institution, after which the surplus to be disposed of as the said Lodge No. 42 should direct, so that the burgesses and in-

(Babb *v.* Reed and others.)

habitants of the borough of West Chester should have no part of the proceeds of such sale, but only the use and rents of the premises during the intervals which might happen before a sale was directed and in which there might be no Lodge of Odd Fellows in existence.

The society of Odd Fellows of which *Robert Smith, Wm. Apple, John T. Haines, Wm. Adle, John Burns,* and *Angus McKay* were members, immediately set about erecting a building. They appointed a building committee of five members, to wit, *Abraham Marshall, Robert Furguson, John T. Haines, Lewis W. Williams* and *William Adle,* who under the direction of the Lodge contracted with workmen, builders and material men, most of whom were members of the lodge, though some of them were not. Some of the contracts were in writing, others were verbal. Neither *William Everhart* nor either of the members of the firm of *Jones & Davis* was a member of the society. The building was finished; a part of it was occupied by the Odd Fellows as a place of meeting, and several rooms were rented out for some time, the rents being paid into the treasury of the lodge.

The enterprize was not prosperous. The interest upon the mortgage was not paid. The mortgagee proceeded by *scire facias,* and to the term of February, 1834, a *levari facias* was issued, by virtue of which the lot, hall and appurtenances were sold for the satisfaction of the debt for the purchase of the lot and interest, after satisfying which and the charges, there remained subject to distribution the sum of nine hundred and twenty-seven dollars and ninety-two cents, that being the whole sum which the hall, building, materials and every thing erected on the lot produced at sheriff's sale beyond the original price of the lot and interest.

The claims upon this fund for materials furnished and work done, were made by *Wm. Everhart, Jones & Davis, John Rutter, Wm. Adle, John Burns, Angus McKay, John T. Haines* and *Wm. Apple.*

The auditor appointed to report upon the claims of the different lien creditors made a *pro rata* distribution of the money among the several claimants.

The court below confirmed the report of the auditor, and decreed distribution accordingly.

From this decree and adjudication an appeal was taken to this court and the question was whether, under the circumstances above stated, *Smith, Apple, Haines, Adle, Burns* and *McKay,* members of the institution and owners of the property against which the aforesaid claims were filed, should take a share of the proceeds of the sale of that property to the prejudice of the claims of *Wm. Everhart* and *Jones & Davis,* who were not members of, nor in any way connected with the society of Odd Fellows.

*Lewis* for appellants.—The lodge of Odd Fellows, from whose

property the money in court has been derived by means of a sheriff's sale, is a voluntary association of individuals, for purposes of mutual advantage and cannot claim the consideration of a charity, or the attributes and privileges of a corporation. A charity, properly so called, is of a public nature. It reaches from itself to others—goes beyond its own doors into the world of misery, and selects its objects from the general mass. The lodge of Odd Fellows had no higher or more extended aim, than that of reciprocal aid amongst its members in sickness or misfortune.

The law respecting such unincorporated companies is the same as in common partnerships. *Watson on Part.* 3. *Gow on Part.* 2, 4, 6, 7. In order to contract the relation of private partnership, nothing more is necessary than the consent of the members constituting the firm: and this consent may be either *express*, or *implied* from the acts of the parties. *Gow on Part.* 5. A mutual interest in the profits and loss of any lawful adventure makes the persons engaged in it partners, and liable to all the responsibilities of that relation, at least, as respects third persons, without regard to the nature of their business or the character of the contract between themselves. There may be a partnership to trade in land. *Brady v. Colhoun*, 1 *Penn. Rep.* 140. Also in the transportation of goods. *Witmer v. Schlatter*, 2 *Rawle*, 359. A partnership may exist between attorneys or farmers. *Coope v. Eyre*, 1 *Hen. Bl.* 37. A company formed for banking purposes contract the liabilities of partners. *Hess v. Werts*, 4 *Serg. & Rawle*, 356. If two persons, who are not partners in trade, draw a bill of exchange payable to themselves or their order, they are partners as to the transaction of the bill, though, in every other respect, they are perfectly distinct. *Gow. on Part.* 8. *Carvick v. Vickerey*, *Doug.* 653, *n.* Then, why may not a partnership exist between persons, who associate either to make a display, or to help each other in extremity, and in their society character build a hall, and make a profit by renting out rooms. It has, indeed, been decided, that a society for mutual relief in sickness, by means of a fund raised by subscription among its members, is a partnership, it having no corporate character. *Beaumont v. Meredith*, 3 *Ves. & Bea.* 180.

The society of Odd Fellows being partners, the members must submit to be ruled by the law applicable to all other partnerships. The joint effects are the property of the firm, and not of the partners, and are liable, in the first instance, to the payment of the partnership debts. The partners are entitled only to a share of the surplus remaining after those debts shall have been discharged.

The debts due to *Everhart* and *Jones & Davis*, are the debts of the firm. They must be first paid. The other claimants being members of the lodge are not entitled to come in till all the creditors are satisfied. A partner to whom the partnership is indebted can have

no satisfaction but out of what may remain after all the joint debts are paid. *Watson on Part.* 329. 1 *Atk.* 227.

The building, from the sale of which the money in court proceeded, and upon which the claims of the appellants attached as liens, under the mechanic's lien law, constituted the whole tangible property belonging to the partnership. The deed by which this property was held, was made to trustees, in trust for the use of the lodge, without naming the *cestui que trust.* Can there be any doubt that the ownership of this property resided in the members of the lodge?

In equity the *cestui que trust* is always considered the actual owner of the land. Here, although the persons who were intended to take are not named, they are sufficiently described. Had the trustees refused to accept the trust their places might have been supplied under our acts of assembly to prevent the failure of trusts: and had they taken and held the property adversely to the association ejectment might, without question, have been sustained against them; that action in Pennsylvania being substituted for the English remedy by a bill in chancery. The circumstance of the *cestui que trust* being a body of unnamed and unincorporated persons can make no difference as to their capacity to take. *See Beatty* v. *Kurtz,* 2 *Peters,* 578-85. *Witman* v. *Lex,* 17 *Serg. & Rawle,* 91. *Case of Sarah Zane's Will,* 24, 45-6.

In this case there has been no difficulty in relation to the title, and the court is not called upon to decide any question between the parties to the deed. The trustees have performed their duties, and the objects of the trust have been attained. The Odd Fellows have occupied a part and let out the rest of the hall, and, indeed, enjoyed, in every respect, and to the fullest extent, the rights of ownership.

But supposing the Odd Fellows not to be partners, but joint owners, merely, can they enforce a lien upon their property, to the prejudice of *William Everhart* and *Jones & Davis,* who have no kind of connection with the lodge? The lien is attempted to be supported by the act of the 17th March, 1806, commonly called the mechanic's lien law. The first section of that act declares, that "all and every dwelling-house and other building shall be subjected to the payment of the debts *contracted for,* or by reason of any work done or materials found," &c. And the second section of the supplement to the act passed the 28th of March, 1808, provides the means for enforcing the lien. Those means are, either by personal action against the debtors, or *scire facias* against the debtor and owner of the building.

The claim, thus made a lien upon the building, must be founded on contract either express or implied, and can be recovered, only by personal action, or by *scire facias,* which under this act is the same thing as an action. Those debts that *are contracted for,* are

(Babb *v.* Reed and others.)

liens for a certain period, and the process to be resorted to for their recovery, is such as is suited to enforce an adversary claim.

If there are any contracts between the Odd Fellows, who claim a share of the spoil, in this case, and the lodge, they are contracts between individual members of the lodge of the one part, and the same individual members and the rest of the lodge, on the other part. In other words, they are contracts between certain persons, and themselves jointly with others. If liens are to be the result of such contracts, and those liens enforced at the expense of third persons, it is obvious, that a wide door is thrown open to fraud, and the egregious absurdity of a man having a lien upon his own property, and thereby cutting out his own creditors, is fully realized. *A.* may as well contract with *A.* as with *A. B.* and *C.* and set up a lien in consequence. The introduction of *B.* and *C.* into the business, only serves to bewilder the view, without altering the principle or changing the certain effect; which is to snatch a portion of the property from the grasp of the joint creditor. Each man's claim if a lien, at all, is necessarily a lien upon his own share of the joint estate as well as upon that of his fellow members. Sanction the claim here urged, and a series of contracts may be made to run through a lodge, embracing every man in it and making every one bear to himself the double relation of creditor and debtor. *A.* may contract with *A. B.* and *C.* &c., *B.* with *B. A. C.* &c., *C.* with *C. A. B.* &c., and thus the associators may severally cover the property of the association with incumbrances to any conceivable amount. But a man cannot contract with himself, nor can he sue others with whom he is joint-tenant or tenant in common, *ex contractu.* 1 *Chitty Pl.* 27. 2 *Bos. & Pul.* 120. The claim is a legal anomaly, and is neither justified by precedent, nor sustained by principle.

Had the enterprise been prosperous, and the building been sold for more than its first cost the Odd Fellows would have enjoyed the whole benefit of the increase in value. *Everhart* and *Jones & Davis* could not have shared in the profits. It is nothing more than reasonable therefore, that having in their favour the chances of gain they should take upon themselves the hazard of the loss. It is flagrantly unjust in them to attempt to make us, who could have derived no advantage whatever from the speculation, participate equally with them in the consequences of their ill fortune or bad management.

*Dillingham,* for the defendants in error.—This association is, as has been stated and argued by the counsel for the plaintiff in error, an association for charitable objects. The first words of the preamble to the constitution avow the object. *" To promote harmony, friendship, love and truth." The preface † states that the society is "founded on the broad principles of *benevolence and charity*"—and again that it " comprises all the provisions of a regular *benevolent*

*Pamphlet copy of the Constitution &c.  † *Ib.*

*society.*" We are told that it aims, " to promote the happiness and improves the condition of man," and " to enforce on the mind the genuine principles of morality, *benevolence* and *philanthropy.*"— The warrant of dispensation to establish this society, states the object to be " for the encouragement and support of brothers of the said order, when in sickness, distress, or on travel, *and for the purpose of benevolence and charity.*"

The opposite argument assumes that all the doctrines, peculiarities, technicalities and liabilities of a partnership under the law merchant are to be visited upon this benevolent and charitable association. This we deny. The authorities cited against us, are British precedents, decided since the revolution, and could only be read as a part of the *law merchant.* We would drive out these " money changers," and establish a distinction between the rules applicable strictly to a partnership under the law merchant, and those applicable to associations for religious, literary, or charitable purposes.

The argument cannot be more strongly stated than in the able and well considered decree of the court below. *" The mere circumstance of being members of the society of Odd Fellows, as we understand the association, does not constitute them a partnership in any shape, so as to make one liable in his private estate for the debts contracted by his fellows ; and even if they must be considered as partners or tenants in common, still a lien filed by one against a building, owned by all, would be available under the act of assembly. No man can be made a partner with others without his own agreement or consent, expressly or impliedly given to that effect. . Partnership is a contract between two or more persons for joining their money, goods, credit, labour, &c. in a common enterprise, for their mutual profit, and agreeing to bear mutual loss ; and third persons and all the world have a right to interpret certain acts into an agreement of partnership, such as sharing the profits and loss of business or enterprise ; or even suffering one's name and credit to be used with others will make him liable as a partner although there may be no original articles of partnership shown; for by such acts he consents, so far as third persons and creditors are concerned, to be held a partner. But the mere circumstance of two or more, either purchasing or holding property together or in common, is not enough to constitute them partners—there must be an agreement, or consent to be so considered, and as such, liable by words or by acts. Take the familiar case of a neighbourhood raising money by voluntary subscription to purchase a lot and build a school-house. They contribute unequal sums according to their will or ability ; they appoint a committee to build the house which is to be for the mutual benefit of all the contributors—it is owned by them through the

* Manuscript opinion of Judge DARLINGTON.

medium of trustees—they are a private unincorporated company associated for a common object. But are they a partnership? Suppose the building committee should be unfaithful and squander the funds, could any suppose that all the subscribers are to be considered as a partnership, and the man who had contributed one dollar's subscription be held liable to the amount of the whole estate for the default of the building committee? Certainly not; simply because the subscribers never contracted to become partners, nor held themselves out to the world as partners, and the builders (in the absence of a mechanic's lien law) would look only to the personal responsibility of those who employed them. Neither will that general indication of a partnership, a participation in the profits, always be found infallible—it is evidence of an agreement of co-partnership, but not conclusive."

This last position, the learned judge supports by the case of seamen employed in the whale fishery, who are often compensated by a certain portion of the profits, (if any) and cites the case of *Price* v. *Austin,* 17 *Mass. Rep.* 205.

In the present case, the members of the society of Odd Fellows, never agreed with each other to be co-partners, and liable as such, " neither is there any evidence from their conduct to the world, such as holding out the credit of names or of a firm dealing or trading in land, goods, stocks or the like, or of participation in the profits or loss, which can entitle third persons to hold them liable as partners." But admitting them to be partners, the words of the act of assembly of 17th March, 1806, (*Purdon's Digest,* 545,) are large enough to cover the case and give them a lien. The words of this act are more broad than those of the prior lien law, and extend the lien to all cases of "materials found." *Steinmetz Ex'r.* v. *Boudinot,* 3 *Serg. & Rawle,* 541.

If this objection is to prevail against *Odd Fellow claimants,* it should prevail *a fortiori* against the *stockholder claimants,* one of whom is of the firm of *Jones & Davis.* Mr. *Davis* is more strictly a part owner, than the Odd Fellows. The fact of stock ownership, independent of the society's interest, shows that as a society they had no interest beyond their charitable and benevolent objects.

*Haines* and *Adle,* who are also of the building committee, stand in respect to *Everhart,* and *Jones & Davis,* on the same footing as any two judgment or mortgage creditors, claiming distribution of a common fund, where there is *a debt from one to the other.* In such a case, can the creditor claim to receive the amount due from his debtor, out of the common fund? Has he a *lien* for it? The contract of the building committee was purely personal, and is superadded to the lien. What their recourse over to their fellow members may be, is another question and a different one.

In the case of *Sarah Zane's will* in the Circuit Court of the United

(Babb *v.* Reed and others.)

States for this district (see pamphlet copy of the case, *passim*) a learned, elaborate and careful opinion was given, which, if sound, places our case clear of difficulty.

It reviews the history of these unincorporated societies in Pennsylvania, for religious, literary and charitable purposes, and comes to the conclusion that they should be regarded in the law, as *corporations by prescription.* This doctrine is certainly more conformable to the common understanding of the community and to common sense, than to visit upon them the strictness and stringency of the law of co-partnership technically so called.

The question there was, as to the right to hold lands by devise. But this involves the whole question in our case. If they are known to the law for any purpose as corporations by prescription, " bodies politic," the immunity will embrace us. This immunity we claim as a part of the common law of Pennsylvania.

There is nothing in the objection that a man cannot contract with himself when the law recognizes a corporation or a trust, it discriminates between the property of such corporation, or the trust fund, and the individual liabilities of the corporators or trustees.

*Tilghman* who was to have replied, was relieved by the court.

The opinion of the court was delivered by

Sergeant J.—The association, from whose property the moneys in court proceeded, was formed and conducted without incorporation. Its objects are stated to be, the employment of its funds in purposes of mutual benevolence, amongst its members and their families; but these cannot be deemed charitable uses under the common law of Pennsylvania or the statute 43 *Elizabeth.* The twenty-one cases enumerated in the statute, and the others constructively *within it,* are of a public nature, tending to the benefit or relief, in some shape or other, of the community at large, not restricted to the mutual aid of a few. And if the objects of the association were within the class of charitable uses, it does not follow, as has been contended, that it is clothed with the character of a corporation, without a charter obtained under the act of 1791, or by virtue of a special act of assembly. Equity finds ways to sustain charitable trusts or uses, without necessarily creating corporations for that purpose—the objects and purposes of the society are of a beneficial kind, and as such might perhaps be embraced by the act of 8th April, 1833, extending to beneficial societies and associations the provisions of the act of 1791. In the absence of any actual charter, it is a voluntary association of individuals, and the members, in their relations to third persons, are to be considered as partners, in the same manner as individuals associated for the purpose of banking; *Hess* v. *Wertz,*

4 *Serg. & Rawle*, 356 ; or joint stock companies, at one time so frequent in England, for commercial and speculating purposes.

That being the case, the claimants must be divided into two classes: First, those who never were members of the association, second, those who were members at the time these claims originated. The latter class, considered in the light of partners, are with the other members of the association jointly and severally liable, for the payment of the debts of the first class; and are, moreover, seeking to enforce a lien on their own property, by which the former class will be deprived of a portion of their debts. It is possible that persons jointly owning lots of ground, and erecting buildings upon them, to which they furnish work and materials, may file liens under the acts of assembly, and maintain them among themselves, on the ground that they are in *equali jure,* and to be considered as mutually waiving objections. But that a person can enforce a lien on his own building, at the expense of third persons who hold similar liens on it for debts contracted by the former to the latter, is not reconcileable with law or equity. At law the lien of the owner would merge in the property, since no man can be both debtor and creditor: and equity would not uphold it in order to place in the hands of the owner himself, a portion of that fund which ought to go to his creditor, whose debt was contracted on the faith of the fund.

We are, therefore, of opinion that the debts of *Everhart,* and of the firm of *Davis & Jones* who were not members of the association, ought to be first paid out of the fund, before any part of it can be appropriated to the claimants who were members : and as there is not money sufficient to pay *Everhart* and *Davis & Jones* in full, it must be distributed between them, in proportion to their respective debts.

> Decree reversed; and decree that
> it be distributed accordingly.