Gibbs vs. Humphrey.

Gibbs, Respondent, vs. Humphrey, Assignee, Appellant.

*September 11 — October 22, 1895.*

*Partnership: Voluntary assignment: Claim of ostensible partner: Separate business.*

Upon the dissolution of a firm of which A. J. G. was a member, its debts were assumed and its business continued by one J. B. G. under the name of J. B. G. & Co., and, by reason of a general hold-

Gibbs vs. Humphrey.

ing out, A. J. G. was ostensibly a partner therein. A. J. G. also carried on a separate business as a banker. Afterwards, J. B. G. made an assignment for the benefit of creditors. He was then largely indebted to A. J. G. at his bank, such indebtedness having accrued in an effort to wind up the business of the original firm to which A. J. G. had belonged. *Held*, that A. J. G. could not prove up such claim in competition with other creditors of J. B. G. who had dealt with him as J. B. G. & Co.

APPEAL from an order of the circuit court for Pierce county: E. B. BUNDY, Circuit Judge. *Affirmed.*

On the 5th day of November, 1891, Alfred J. Goss and J. D. Putnam were, and had been continuously for some years prior thereto, doing a milling business as copartners under the firm name of J. D. Putnam & Co. at River Falls, Pierce county, Wisconsin. On the day particularly named the partnership was dissolved, and it was agreed that the business should thereafter be continued by J. B. Goss, as J. B. Goss & Co., and that he should assume all the liabilities of the old firm, and have the firm assets. Pursuant to the aforesaid agreement, the partnership property was conveyed to J. B. Goss, being first transferred to A. J. Goss, but for what reason does not clearly appear, and by him to J. B. Goss. Immediately after the dissolution of the old firm, the parties caused the following notice thereof, and of the fact that the business would thereafter be conducted by J. B. Goss & Co., to be published in the local paper:

"Notice is hereby given that the copartnership formerly existing between the undersigned, J. D. Putnam and Alfred J. Goss, under the firm name of J. D. Putnam & Co., is this day dissolved by mutual consent, and the business will in future be carried on under the firm name of J. B. Goss & Co., who will settle all claims of the late copartnership.

"November 3d, 1891.    J. D. PUTNAM,
"ALFRED J. GOSS."

The business was thereafter conducted without any information to the public of a change in the members of the firm,

except such as was contained in the published notice, till June, 1893, when A. J. Goss, who was the proprietor of a bank at Hudson, Wisconsin, failed, and J. B. Goss also failed. Each made an assignment for the benefit of creditors,— the former to *H. L. Humphrey*, the defendant.    At the time of such failures J. B. Goss was indebted to A. J. Goss, at the bank, to the amount of $45,000, which included a large amount of old firm indebtedness existing at the bank at the time of the dissolution and thereafter assumed by J. B. Goss, and the balance was for money loaned by A. J. Goss to enable the former to carry out his agreement to assume and pay the J. D. Putnam & Co. debts, and to carry on the business. J. B. Goss was a son of A. J. Goss, and was not supposed at any time to be the owner of much property or means of any kind, but the father, up to the time of the assignment, was supposed to be very wealthy.    Substantially all the creditors of the old firm and also of J. B. Goss & Co., prior to the assignment, supposed that A. J. Goss was a member of the new firm.    Defendant filed a claim in the assignment proceedings of J. B. Goss, for the indebtedness of J. B. Goss & Co. to his assignor.    Objections to such claim, in the form of a petition for its disallowance, were filed by *Mary C. Gibbs*, a creditor of J. B. Goss; and from an order disallowing the claim the defendant, as assignee of A. J. Goss, appealed.

For the appellant there was a brief by *Spooner, Sanborn, Kerr & Spooner*, and oral argument by *Chas. P. Spooner, A. L. Sanborn*, and *J. B. Kerr*.    They contended, *inter alia*, that, even upon the assumption that A. J. Goss was a partner in J. B. Goss & Co., he should be allowed to prove his claim because he carried on a distinct business as a banker, and the claim was for money advanced in the regular course of that business.    Story, Partn. (Bennett's ed.), § 394; Parsons, Partn. (3d ed.), 544; 2 Bates, Partn. § 837; Cooke, Bankrupt Laws, 534, and cases cited; *Ex parte Hesham*, 1

Rose, 146; *Ex parte Maude*, 2 Ch. App. 554; *Ex parte Castell*, 2 Glyn & J. 124; *Ex parte Brenchley*, 2 id. 127; *Ex parte Stroud*, 65 Eng. C. L. 502; *Ex parte Sillitoe*, 1 Glyn & J. 374.

*F. M. White*, for the respondent, to the point that, appellant's assignor being liable as a partner to all the creditors of J. B. Goss, it follows in equity that the debts of J. B. Goss should be paid out of the assets of the ostensible partnership of J. B. Goss & Co., before the payment of appellant's claim, cited *In re Lloyd*, 22 Fed. Rep. 90–92; *Van Kleeck v. McCabe*, 87 Mich. 599, 603; *Somerset P. Works v. Minot*, 10 Cush. 502, 598; *Kelly v. Scott*, 49 N.Y. 595, 597, 602; *Rosenbaum v. Hayden*, 22 Neb. 744, 750; *David v. Birchard*, 53 Wis. 492, 497.

MARSHALL, J.  The question here presented is, Can the appellant, representing the claim of his assignor, prove up such claim in competition with the other creditors who dealt with J. B. Goss as J. B. Goss & Co.?  The trial court found that, as between A. J. Goss and the creditors of J. B. Goss, the two, by reason of holding out, must be considered as partners under the name of J. B. Goss & Co.; that A. J. Goss and his assignee, by reason of the facts, are estopped from setting up to the contrary.  The conclusion reached by this court in *Thayer v. Goss, ante,* p. 90, is conclusive in favor of the finding of the court below on this point.  The published notice of dissolution was not only not notice that A. J. Goss had retired, but from it all persons had a right to assume that he occupied the same position in the new firm of J. B. Goss & Co. that he did in the old firm of J. D. Putnam & Co.  Respondent relies upon the notice of dissolution and change of the firm name.  In *American L. T. Co. v. Wortendyke*, 24 N. Y. 550, where the precise question was presented in respect to a similar notice, the rule was stated as follows: "When notice of a change of firm name is relied upon to

exonerate one who has been a partner, such change must show that he has withdrawn from the business; and any change which does not indicate that does not put dealers with the concern upon inquiry. They may safely assume, until they have notice to the contrary, that all the former partners not apparently affected by the change of name yet. remain in the business." Numerous authorities might be cited to sustain the rule thus stated, and we venture the assertion that no reputable authority can be found to the contrary.

The general rule is that the individual partner cannot himself prove against the joint estate in competition with creditors of the firm. Collyer, Partn. § 921; Burrill, Assignm. § 179; *Peters v. Bain*, 133 U. S. 670. This is upon the ground that he himself is liable to the firm creditors, and cannot be permitted to diminish the firm assets to the prejudice of those who are not only creditors of the firm but of himself. Lindley, Partn. 721. In case of an ostensible partnership, where there is a general holding out, as in this case, the same reasoning will necessarily apply. The ostensible partner is liable to the firm creditors the same as, if he was a partner in fact. There is no difference. *In re Rowland*, 1 Ch. App. 421; *Ex parte Hayman, In re Pulsford*, 8 Ch. Div. 11. Therefore, neither A. J. Goss nor his, assignee can come in and prove against the ostensible firm of J. B. Goss & Co., and diminish the assets to the prejudice of those who are not only creditors of such ostensible firm but of A. J. Goss himself.

The rule as stated is conceded by appellant's counsel, but they urge the exception, well known to and recognized by the English courts, that, " when one or more members of a firm carry on a distinct trade, proof will be admitted between the estate of the general and the particular firm, *pari passu* with all the creditors, in all cases where the debt has arisen from goods furnished by one firm to the other in a

manner as if they had been utterly unconnected in trade; but that, except in the case of bankers, this rule will not be applicable when the debt has arisen only from money advanced by one firm to the other." Collyer, Partn. § 1004, and cases cited. The learned circuit judge found that the debt did not accrue from the loan of money by A. J. Goss in the regular course of his separate business and in a manner as if such separate business was entirely unconnected with the business of J. B. Goss & Co., but that the whole indebtedness accrued in an effort to wind up the old business of J. D. Putnam & Co.; and this finding is fairly supported by the evidence. It follows that a discussion of the question of whether the exception to the general rule mentioned is recognized in this country would be needless, and that the order appealed from should be affirmed.

*By the Court.*— The order appealed from is affirmed.