## Josselson Brothers v. Butler & Lipsitz, etc.

(Decided January 20, 1915.)

### Appeal from Pike Circuit Court.

Partnership—Insolvent Partnership—Attachment Against Property of—Fraud in Obtaining—How Attached Property Should Be Disposed of.—Where, in an action against an insolvent partnership and the members of the firm, an attachment was levied upon the partnership property for an alleged debt sued on by the plaintiffs, and it was made to appear from the evidence that the plaintiffs were not, in fact, bona fide creditors, but silent partners in or part owners of the business and property of the defendant partnership, and that the action was brought and attachment procured for the purpose of defrauding actual creditors of the latter, the judgment of the circuit court dismissing the action and at-

tachment of the plaintiffs, and applying the proceeds of the attached property to the payment of the debts of other attaching bona fide creditors of the partnership, according to priority, properly determined the rights of the parties.

J. S. CLINE for appellant.

STATON & PINSON for appellee, Huffman.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

Prior to the second day of October, 1911, the appellee, R. T. Huffman, was engaged in the business of selling groceries and soft drinks in the city of Pikeville. On that day he sold to the appellee, Milt Butler, a one-half interest in this business at the price of $400.00, for which he executed to Huffman his note, payable twelve months after date. The business was conducted by Huffman and Butler until October 11, 1911, when, by a written contract, the former sold his remaining interest in the business, which was one-half, to the appellee, Frank Lipsitz, the consideration being $400.00 in hand paid, and Lipsitz endorsing and guaranteeing the payment of the balance of $300.00 Butler then owed Huffman on the $400.00 note executed by Butler October 2, 1911; $100.00 having been paid on the note by Butler on the day Huffman sold his interest in the business to Lipsitz. The business was then conducted in the name of Butler & Lipsitz until the 27th day of November, 1911. On that day the appellants, Josselson Bros., a firm composed of F. R. Josselson and Alex. Josselson, doing business at Catlettsburg, Kentucky, having, as alleged, an account of $385.80 against Butler & Lipsitz for merchandise claimed to have been sold them after November 11th, brought suit against them in the Pike Circuit Court to recover that amount; but it was later admitted of record that their account amounted to $361.41 instead of $385.80.

It was alleged in the petition that Butler & Lipsitz were insolvent, and were about to sell and convey, or otherwise dispose of, their property with the fraudulent intent to cheat and delay their creditors; that neither of them had any property in this State subject to execution, or enough thereof to satisfy the plaintiffs' demand, and that the collection of the demand would be endangered by delay in obtaining judgment and return of no property found  Upon the filing of the petition a sum-

mons and order of attachment were duly issued thereon, and duly served upon each of the defendants; and, on November 27, 1911, the attachment was levied upon the stock of goods and other property belonging to the firm of Butler & Lipsitz.

On November 27, 1911, but, following the institution of the action of the appellants, Josselson Bros., the appellee, R. T. Huffman, also instituted suit against Butler & Lipsitz, in the Pike Circuit Court, seeking to recover of them the balance of $300.00 due on the $400.00 note which Butler executed to him October 2, 1911. Josselson Bros. and members of the firm were also made defendants. Huffman's petition contained the same grounds for an attachment alleged in that of Josselson Bros., and he caused to be issued in his action a summons and order of attachment, both of which were duly served upon each of the defendants November 28, 1911; the attachment being at the same time levied upon the stock of merchandise and other property owned by the firm.

The petition of Huffman, after declaring on the note of $400.00, less the credit of $100.00, which had been executed to him by Butler, alleged that on the second day of November, 1911, he (Huffman) entered into a written contract with the appellants, Josselson Bros., who were then and are now engaged in the whiskey business in Catlettsburg, this State, whereby he, Huffman, agreed to sell to them on or before November 11, 1911, his one-half interest in the business of Huffman & Butler; and that on the 11th day of November, 1911, pursuant to the contract in question, he did sell to Frank Lipsitz, the nephew and agent of Josselson Bros., his one-half interest in the business and property of Huffman & Butler. That the consideration for this sale was $400.00, which was cash in hand paid, and Josselson Bros. undertaking by Lipsitz to endorse and guarantee the payment of the note held by Huffman against Butler; that, though Lipsitz was named in the contract as the purchaser of Huffman's interest in the business and property of Huffman & Butler, the Josselson Bros. were the real parties in interest, but that the business was to be conducted for them by Lipsitz, their agent and trustee, in connection with Butler, as Josselson Bros. did not wish to be known to the public as partners therein; and that Butler, Lipsitz and the Josselsons then

agreed that $20.00 per week should be taken out of the proceeds of Butler's one-half interest in the business by Lipsitz and paid over to Huffman on Butler's note until discharged; such payments and none of them were ever made.

It was, in substance, further alleged in the petition that the account for which Josselson Bros. sued Butler & Lipsitz was a bogus claim; that their action and the procurement and levy of the attachment therein were parts of a scheme resorted to for the fraudulent purpose of defeating Huffman in the collection of the note he held on Butler, in which both Butler and Lipsitz participated; and that for the purpose of executing such fraudulent intent, Frank Josselson, one of the firm of Josselson Bros., before entering the suit against Butler & Lipsitz, obtained from the latter the key to the store, took possession of the goods therein, and advised Lipsitz to board a train and leave the county and State with moneys which he had received in the course of the business, which advice Lipsitz immediately took and followed, carrying with him moneys received for the firm of Butler & Lipsitz which should have been appropriated to the payment of the firm's debts.

The appellants, Josselson Bros., filed an answer to Huffman's petition, traversing its affirmative matter, but neither Butler nor Lipsitz made any defense to either of the actions.

After the institution of the actions of Josselson Bros. and R. T. Huffman against Butler & Lipsitz, a third and similar action was brought against them by Hagen-Ratcliff & Company, a corporation of West Virginia, to which the appellee, R. T. Huffman, was also made a defendant, the object of which was to recover of Butler & Lipsitz an account of $72.16 for merchandise which the plaintiff company had sold them. The defendants were all duly summoned to answer the petition. An order of attachment was also issued in that action, which was levied upon the merchandise and property of Butler & Lipsitz.

After the completion of the issues as stated, an order was entered taking for confessed, as to Butler and Lipsitz, the allegations of each of the petitions in the three actions filed against them. After the taking of proof, the three actions were consolidated and transferred to equity. By an agreed order, previously en-

tered, the stock of goods and other property levied on under the several attachments were sold by two receivers, who were directed to hold the proceeds until finally disposed of by judgment of the court. By agreement of the parties the consolidated causes were tried by Hon. A. E. Auxier, as special judge, who, upon the hearing dismissed the petition and attachment of Josselson Bros. at their cost, gave R. T. Huffman a personal judgment against Butler and Lipsitz for the amount due and interest on the note executed to him by Butler, sustained his attachment and awarded him his cost; also gave Hagen-Ratcliff & Company a personal judgment against Butler and Lipsitz for its account of $72.16, with interest and cost, and sustained its attachment. But the court, being of the opinion that the claim of Hagen-Ratcliff Company was a debt owing by the firm of Butler & Lipsitz, and that of Huffman a debt owing by Butler and Lipsitz individually, held that the demand and attachment of Hagen-Ratcliff & Company was a prior lien upon the assets of the firm of Butler & Lipsitz, hence it was adjudged that the assets held by the receivers be first applied to the payment of Hagen-Ratcliff & Company's debt; and that what remained thereof be applied to the payment of Huffman's debt.

From that judgment Josselson Bros. have appealed.

Without discussing in detail the evidence found in the record, we think it abundantly justified the dismissal of the petition of the appellants, Josselson Bros. (1) If they were silent partners in and joint owners of the property and business operated and controlled by Butler & Lipsitz, as the weight of the evidence conduced to prove, they could not, even though their claim was a bona fide demand, as a matter of law, have obtained by their attachment, although first levied, priority over creditors of the firm. (2) The evidence introduced in support of their account does not, in our opinion, sustain its genuineness. On the contrary, the evidence, as a whole, convinces us of its spuriousness, for we think it shows that the appellants' claim was conceived when they ascertained that the business conducted by Butler & Lipsitz was unprofitable, and was planned to enable them to withdraw from the business the money they had invested in it and let whatever loss that might result fall on the creditors of the firm. (3) Fairly analyzed, the facts and circumstances furnished by the record

establish appellants' connection with and interest in the business of Butler & Lipsitz. The sale by the appellee, Huffman, of his half interest in the business of Butler & Huffman to Lipsitz for the appellants, Josselson Bros., is shown by the fact that Frank Josselson, of that firm, negotiated the sale after first taking the option for himself; that he employed and paid the draughtsman of the writing evidencing the sale; and that he paid to Huffman the $400.00 purchase price agreed to be paid for his interest; and, in addition, guaranteed that Lipsitz would endorse the note which Huffman held upon Butler, and pay the $300.00 due thereon out of the proceeds of the business to be conducted by Butler & Lipsitz, at the rate of $20.00 per week. Moreover, Lipsitz was not seen by Huffman until the day he presented himself to make the purchase according to the terms of the contract theretofore agreed upon between Huffman and Frank Josselson, and, according to Huffman's testimony, the purpose of Josselson Bros. in using their nephew Lipsitz's name in the business was to avoid criminal prosecutions that might result from the selling of spirituous liquors in the business under the pretense of their being soft drinks. Huffman also testified that Lipsitz did not put a dollar of his own money in the business, but that Frank Josselson told him that the Josselson Bros. had put all the money it in and that they were going to run it in Frank Lipsitz's name, and we have been unable to find in the depositions of the Josselsons any contradiction of this statement made by Huffman.

We also find in the record the deposition of Hawk Bishop, a witness introduced in behalf of appellees, who testified that he attempted to buy from Lipsitz his interest in the business, but was told by the latter that he could do nothing until he saw Frank Josselson. Thereafter the witness did see Frank Josselson, to whom he communicated what Lipsitz had said and with whom he then entered into negotiations for the purchase of the interest in question, and Josselson made no denial of his authority to make the sale. Huffman's testimony that the $400.00 which he received for the interest sold Lipsitz was paid to him by Frank Josselson is corroborated by R. H. Cooper, one of appellants' attorneys.

It was also admitted by Milt Butler, to whom Huffman made the first sale of a half interest in the store

and business at Pikeville, that Frank Josselson had the keys, or one of them, to the store on the day the attachment of Josselson Bros. was levied; and that Josselson Bros. had agreed to assume responsibility for the payment of all fines that might be imposed against Butler and Lipsitz, or either of them, for any violations they might commit of the local option law, some of which fines were paid by Frank Josselson. Butler also admitted that he was paid $25.00 in a draft on Josselson Bros. to make no defense to their action.

In the depositions given by them the two Josselsons and Lipsitz denied that the Josselsons had or at any time owned an interest in the business conducted in the name of Butler & Lipsitz; and, in general terms, also denied that there was any collusion between them to fraudulently appropriate the money and property of the business conducted in the name of Butler & Lipsitz for the purpose of cheating the latter's creditors, but they were in all material matters contradicted and their testimony overthrown by the weightier evidence furnished by the appellee Huffman and his witnesses, which, in addition to showing the interest of Josselson Bros. in the business of Butler & Lipsitz, also fairly proved that the motive inducing them to make the purchase of that interest from Huffman was the profit they expected to derive from the illegal sale of their liquors in Pikeville and Pike county under color of the soft drink business; and also that their motive in bringing the suit against Butler & Lipsitz and attaching the goods and property under their control, was to recoup themselves for such losses as had been sustained by them in the business, at the expense of the creditors of the so-called firm.

In brief, we think the special judge had ample grounds for dismissing the petition of the appellants, Josselson Bros., as the fraudulent character of their claim was fully established by the evidence; and, as we are further of the opinion that he properly determined the rights of the appellees, Huffman and Hagen-Ratcliff & Company, as between them and against Butler & Lipsitz, the judgment is affirmed.