No. 4187.   Decided June 28, 1929.
(18 S. W., 2d Series, 1052.)

*Samuels & Brown,* for plaintiff in error.

Wagner Supply Company, having furnished casing on which the court foreclosed the mechanic's lien, is entitled to a materialman's lien on said casing and the derrick superior to any claim of lien in favor of the defendant, A. C. Bateman, who furnished no material or supplies, but furnished labor only. Security Banking & Investment Co. v. Flanagan, 254 S. W., 761; Williams v. Magouirk, 235 S. W., 640; McClellan v. Haley, 237 S. W., 627.

Article 5639a of Vernon's Sayles' Statutes is the only authority for a lien in favor of those who furnish material and supplies and labor used in the drilling of an oil well, and that statute, as it has been construed by our courts, does not confer on the one who furnishes labor only a lien on casing and derrick, and particularly a lien co-ordinate with one who furnishes the casing and other material. Same authorities.

*L. J. Wardlaw, J. T. Tuohy* and *Grady Lowrey,* for defendant in error.

Bateman has a valid laborer's lien on the lease, and the casing in the well and the derrick, they being appurtenant to the lease and to the well. Vernon's Texas Statutes, 1918 Sup., Art. 5639a; Words and Phrases, 1st and 2nd Series, "Appurtenances"; Bouv. Law Dict., "Appurtenances"; Williams v. Magouirk, 235 S. W., 643.

There is another theory upon which the lien of appellee, Bateman, attaches to the casing in the well and derrick, they being included within the term "oil well" itself. Words and Phrases, 1st Series, "Oil Well."

For no other reason than the doubtful nature of the language employed, the mortgage lien should be restricted to the 12½ and the 10 inch casing only. Maxwell v. Wilmington Dental Mfg. Co., 77 Fed., 940.

The casing having become a part of the well upon its completion, the intervening mortgage of appellant could not destroy the priority of the laborer's and materialman's liens of appellant and appellee, respectively. Oriental Hotel Co. v. Griffiths, 33 S. W., 661.

Mr. Chief Justice CURETON delivered the opinion of the court.

J. C. Roberts and others owned an oil and gas lease in Stephens County, on which there was an uncompleted well. Roberts, acting for himself and associates, employed Bateman to finish the well. Bateman was to receive a one-fourth interest in the lease and its

products, and in addition was to be paid cash for a certain portion of his labor and for shutdown time. The well was brought in as a producer, but at the time of the trial of this case had ceased to have any productive value. Because of disagreement or dissatisfaction among the owners, J. C. Roberts and others filed suit on June 9, 1921, in the District Court, against Bateman and others, setting out the differences which had arisen between the parties, and praying for a receiver. A receiver was appointed, and was apparently in possession of the property at the time of the trial of this case. In April, 1922, Bateman filed his original answer to plaintiff's original petition, and by cross bill claimed an indebtedness alleged to have been incurred under the contract for drilling the well and caring for the property. He impleaded the Wagner Supply Company and others, who it was stated were asserting liens on the lease and personal property, but stated that his lien under the drilling contract as a laborer was superior to the lien held by the Wagner Supply Company. The Wagner Supply Company answered this cross action, and by plea of intervention set up a claim for material furnished, alleged the execution of a chattel mortgage by J. C. Roberts and others on certain personal property used in connection with the well, asserted a materialman's lien also on the lease and on the personalty furnished by it and other personal property used in connection with the well, and prayed for judgment in the amount of its debt, and the establishment of its liens. It also claimed its liens were superior to any lien that Bateman might have, and that its claim had priority over the expenses of the receivership. The trial court rendered judgment for both Bateman and the Supply Company, awarding to the former a mechanic's lien, and to the latter a materialman's lien, on the lease and personal property used in connection with the well; but declared that these liens were coordinate and of equal dignity. He ordered the property sold, and the proceeds derived therefrom paid out proportionately on the judgments of Bateman and the Wagner Supply Company. The Wagner Supply Company appealed to the Court of Civil Appeals, where the judgment of the trial court was reformed as to the payment of certain receivership expenses, but otherwise affirmed. The opinion of the Court of Civil Appeals may be found in 260 S. W., 672.

On January 7, 1921, Withers and Roberts purchased a large amount of well casing from the Wagner Supply Company, and to secure the purchase price executed to that company a chattel mort-

gage on 850 feet of $12\frac{1}{2}''$ casing and 1650 feet of $10''$ casing, which is described in the instrument. The mortgage declared that the material was to be placed on a tract of land in Stephens County, described by metes and bounds, being land upon which the well herein referred to was to be or was being drilled. The mortgage in part declared:

"This conveyance being made and the liens hereby acknowledged and created incident to the purchase by us from Wagner Supply Company of all the said property, and while the said property is yet in possession of Wagner Supply Company, and the delivery of which to us is made subject to the lien retained by the Wagner Supply Company on all of said property, and which said property is to be placed upon the hereinabove described tract of land, but subject to our exclusive control, and not to become attached to or affixed to the realty."

The mortgage also covered future advances or deliveries of property of like character to that described in the mortgage. Under this instrument the Wagner Supply Company not only sold and delivered to Withers and Roberts the $12\frac{1}{2}''$ and $10''$ casing specifically described in the mortgage, but delivered a large amount of other casing and related supplies, upon which it also claims a lien under this instrument. We think the chattel mortgage was sufficient to cover such future deliveries or advances as were within the descriptive clause of the mortgage, and at the time of this trial evidence a valid and subsisting lien. Stell v. Paschal, 41 Texas, 640, 656; Glenn v. Seeley, 25 Tex. Civ. App., 523, 61 S. W., 959; Openshaw v. Dean, 59 Tex. Civ. App., 498, 125 S. W., 989; 11 Corpus Juris, p. 495, Sec. 159; 41 Corpus Juris, p. 462, Secs. 362, 365; 37 Corpus Juris, p. 324, Sec. 32; Phillips on Mechanic's Liens (3d Ed.), sec. 236.

Bateman claimed a lien on this property under Article 5639a, Revised Statutes, Vernon's Complete Texas Statutes 1920, because, he contended, that as a laborer and mechanic, under his contract to drill the well, he had a lien on the material used in and appurtenant to the well. We do not agree with this contention. The material furnished by the Wagner Supply Company was not supplied by Bateman, and the mechanic's or laborer's lien under the statute invoked did not apply in his behalf to material as such furnished by the Wagner Supply Company. Security Banking & Investment Co. v. Flannigan, 254 S. W., 761.

The only way by which Bateman could claim a laborer's or mechanic's lien on the well casing, or other material which became a part of the property used in drilling and operating the well, would be for us to say that this material became a part of or appurtenant to that portion of the realty, or the lease, or well, to which Bateman's laborer's or mechanic's lien did attach under the statute invoked; in other words, to say that the chattel mortgage ceased to be effective because the property described in the mortgage and embraced in its specific and general terms became a part of the realty, or of the lease or well, and no longer subject to the terms of the chattel mortgage. However, we do not think it became a part of the realty or of the lease or of the well, or appurtenant thereto, under circumstances which defeat the mortgage lien. It is clear from the mortgage itself that the contracting parties intended that it should remain personalty and be subject at all times to the mortgage lien. It is true that the casing was placed in an oil well, a use no doubt in the contemplation of the parties at the time the mortgage was given, but one not inconsistent with the right at all times to consider the casing as personal property, and to agree that it should not, by such use, become a part of the realty. In fact, the action of the parties in this instance is a very fair illustration of the use which may be made of casing, and of the interpretation which ought to be put upon this mortgage and the rights thereunder. As a matter of fact, some of the casing was drawn from the well, sold by Mr. Bateman, and the proceeds therefrom paid to the Wagner Supply Company in partial satisfaction of its note and mortgage. Under elementary authorities the parties had the undoubted right to agree that the property covered by the mortgage should continue to be personalty, although attached in the manner shown to the realty. Jones on Mortgages (8th Ed.) Secs. 531, 532, 534.

Roberts and associates merely had an oil and gas lease on the land. They did not own the soil itself, in which the casing was placed, aside from the oil and gas in place embraced within the terms of their lease. The exact terms of their lease are not shown by the record, but there is no contention here but that it was in the usual form of such conveyances, which permit the drawing of the casing and removal of rigs when a dry hole or unproductive well is found. In fact, the contract between A. O. Bateman and J. C. Roberts, under which Bateman claims in this suit, clearly shows that it was contemplated that the casing put into the well might be pulled. This

instrument provides that in the event of the abandonment of the well, Bateman is to be paid for pulling the casing at a certain rate per day. This we think shows plainly that it was never in the contemplation of Bateman that this casing should become a part either of the realty itself, and therefore the property of the owner of the solid materials of the earth, or that it should become a part of the oil and gas lease, a one-fourth undivided interest in which was conveyed to him by his drilling contract.

The owner of the soil is not a party to this suit, and no one is contending that he has any interest or claim in this casing, or that he has any rights to the casing superior to those of the Wagner Supply Company. We do not think that the casing, under the facts of this case, became a portion of that part of the realty embraced in the oil and gas lease, and therefore a fixture which could not be removed. Southwestern Oil & Gas Co. v. Kimball O. & D. Co., 224 S. W., 1111; Wright v. MacDonnell, 88 Texas, 140; Summers on Oil & Gas, sec. 210; Thornton on Oil & Gas (4th Ed.), Vol. 1, sec. 653; 26 Corpus Juris, p. 696, secs. 81, 83, 84, 85, 87, and cases cited in Note 97, p. 702; see also Moore v. Carey Bros. Oil Co., 269 S. W., 75, 39 A. L. R. 1247.

The statute (Art. 5639a, supra) under which Bateman claims, does not purport to give a prior or superior lien to the laborer or mechanic, or to declare that the statutory lien provided for shall supersede prior liens on the property. It simply gives a lien, and leaves that lien to attach to whatever interest in the property the employer may have. Under such a statute the mortgage lien retains its priority. American Type Founders Co. v. Nichols, 110 Texas, 4; 11 Corpus Juris, p. 656, sec. 403, p. 647, sec. 389. We hold, under the authorities as applied to the facts of this case, that the chattel mortgage lien was superior to any lien claimed by Bateman on the property covered by the mortgage.

The Wagner Supply Company was also a materialman, and had taken the steps necessary to fix its lien as such. As to all material actually furnished by the Company—pipe, casing, tanks, etc.,—the materialman's lien became effective when the goods were delivered. The Company's lien was a first lien, which did not lose its priority, since we have held that the merchandise supplied was removable from the well and premises, and Bateman had no lien thereon.

The Wagner Supply Company also claimed, and had, a materialman's lien on the derrick and other material not supplied by it, and on the well and the lease. We think this lien also was superior to

the laborer's lien claimed by Bateman, because of the relationship of Bateman to the joint enterprise. The record in this case plainly shows, and Bateman alleged, that Roberts and his co-owners of the lease and uncompleted well were partners when Bateman entered into the drilling contract with Roberts, whose authority to enter into a contract binding the partnership is not contested by anyone. Under this contract Bateman agreed to finish drilling the well. Roberts was to furnish the rig, casing, water, gas, etc. Bateman was to be paid specified amounts of money for delay or shutdown time, and for drawing casing, but for drilling the well he was to receive the consideration named in the last clause of the contract, which reads:

"For the drilling of said well the party of the first part agrees to assign to the party of the second part an undivided one-fourth ($\frac{1}{4}$) interest in and to the entire production of the oil and gas, or both, to be produced from the above well, and any other well to be drilled upon said land free of cost F. O. B. pipe line.

"And the party of the first part, in consideration of the party of the second part drilling said well in the manner above mentioned, has bargained, sold and assigned, and by these presents does bargain, sell and assign unto party of the second part, an undivided one-fourth ($\frac{1}{4}$) interest in and to the entire production of oil and gas, or both, to be produced from said land, which one-fourth ($\frac{1}{4}$) interest is to be held as royalty interest, free from cost and free from any and all charges incident to the operation of said well for oil and gas.

"To have and to hold *said interest in said land* unto the said A. O. Bateman, his heirs and assigns forever, and I, J. C. Roberts, party of the first part, herein warrant that I am vested with a good title to an undivided one-fourth ($\frac{1}{4}$) interest in and to said land, and I warrant same unto the said A. O. Bateman, his heirs and assigns forever." (Italics ours.)

The record shows that the casing, etc., was furnished by Roberts, and that Bateman drilled the well, which came in as a producer; but at the time of the trial of this case its production was negligible in quantity. Bateman by his cross action asked for a judgment for shutdown time and damages for delay in terms of the contract and for one-fourth of the oil produced from the lease. The trial court in its judgment found that Bateman was entitled "to one-fourth of the mineral interest in and to the leasehold estate described in plaintiff's original petition," and awarded to Bateman one-fourth of the

proceeds derived from the sale of oil from the lease. We think the record as a whole shows that while the lease was in the name of Roberts, he with others was engaged in operating thereon for oil and gas, and that while they were so engaged Bateman, with labor instead of money, purchased a one-fourth interest *"in said land,"* with a right to share in all the production thereafter, not only from the well which Roberts was employed to drill, but from any other well which might be drilled on the leasehold estate. According to Bateman's own allegations, Roberts and his associates were a partnership owning an oil lease, and engaged in drilling for oil, at the time he made the contract with Roberts for a one-fourth interest in the enterprise. We think he thereby became a partner, and as to third parties subject to the liabilities of that relationship in the same manner that he claims that the other partners were liable to him under his contract with Roberts, who appears to have been the managing partner.

There is present here not only a joint ownership of the lease by Bateman and Roberts and his associates, but joint operation, sharing of profits, community of interests, and the mutual agency of Roberts representing the partnership in the management of the lease and exploration for oil. It is unnecessary to discuss the various technical tests of whether or not a partnership exists. The rule is that a mining partnership arises by operation of law where co-owners work a mine. Bateman was one of the co-owners of this lease, and while his associates supplied material, he did the labor and the work of operating the mining enterprise and making the well produce oil. This under the authorities makes him a partner with Roberts and associates. Rowley Modern Law Partnership, Vol. 1, Sec. 153; Munsey v. Mills & Garrity, 115 Texas, 469, 283 S. W., 754, 759; Summers on Oil & Gas, secs. 234, 235; Kelley Island Lime & Transport Co. v. Masterson, 100 Texas, 38; Indiahoma Refining Co. v. Wood, 255 S. W., 212.

It is true that Bateman, as between himself and his other partners, was not required to share the expense of producing oil. But he was none the less one of the owners and operators of the lease, and entitled to a one-fourth share in all the oil produced from all wells on the lease.

The clause in the contract that Bateman's one-fourth interest "is to be held as royalty interest" plainly shows that, as between the owners, his interest was to be free of cost to him, as royalty is ordinarily free of cost to the owner. The property rights, however,

of Bateman were not those of a royalty owner. He was not the original owner of the lease or the entire estate in the land, and he bought no royalty interest from anyone. Royalty is usually the amount reserved or the rental to be paid the original owner of the whole estate, and Bateman's interest does not come within the usual and ordinary signification of the term. Hill v. Roberts, 284 S. W., 246; Curlee v. Anderson, 235 S. W., 622. The plain facts are that the partnership was engaged in a mining enterprise, and Bateman became the purchaser of a one-fourth interest therein, paying for the same, however, in labor. As such he became a mining partner, subject to the liabilities and entitled to the rights and privileges of such relationship.

Since Bateman was a partner in the enterprise, he becomes a secondary creditor. Whatever rights he may possess under his contract are inferior to the rights of partnership creditors, such as the Wagner Supply Company, and it is only after the latter's claims have been discharged that he can secure recognition of his demands. Rowley Modern Law of Partnership, Vol. 1, sec. 537; Equitable Trust Co. v. Central Trust Co., 145 Tenn. 148, 239 S. W., 171, 181; Bates on Partnership, Vol. 1, sec. 188; 30 Cyc. p. 542; In Re D. D. Perkins & Co.'s Estate, 166 Mo. App., 170, 148 S. W., 969, 973; White Cloud Milling Co. v. Thomson, 264 Mo., 595, 175 S. W., 897; Lyons v. Murray, 95 Mo., 23, 8 S. W., 170; Babb v. Reed, 5 Rawle, 151, 28 Am. Dec., 650; Wallerstein v. Ervin, 112 Fed., 124; Lawson v. Dunn, 66 N. J. Eq., 99, 57 Atl., 415; Wilkerson v. Tichenor, 62 S. W. (Ky.) 870; Brewer v. Johnson, 87 Ark., 641, 112 S. W., 364; Irwin v. Bidwell, 72 Penn. St., 244, 250; Pott v. Schmucker, 84 Md., 535, 35 L. R. A., 392; Josselson Bros. v. Butler & Lipsitz, 162 Ky., 229, 172 S. W., 503; Edison Electric I. Co. v. DeMott, 51 N. J. Eq., 16, 25 Atl., 952; Gibbs v. Humphrey, 91 Wis. 111, 64 N. W., 750; Parsons on Partnership (3d Ed.) 276, Sec. 253, p. 376, Secs. 347, 348, 349; Pollock on Partnership (11th Ed.), 171; R. C. L., Vol. 20, p. 1039, sec. 280; see also Moore v. Steele, 67 Texas, 435; Taylor v. Missouri Glass Co., 6 Tex. Civ. App., 337, 25 S. W., 466.

In Rowley on Partnership, cited above, the rule is declared as follows:

"A partner stands, in the matter of obtaining satisfaction of any debts owing him by the firm as such, on a plane intermediate between those occupied by firm and individual creditors. In other words, he is a secondary creditor. Whatever right he may possess

as regards reimbursement is inferior to the rights of partnership creditors and it is only after the latter's claims have been discharged that he can secure recognition of his demands." Rowley on Partnership, sec. 537.

In the case of In re Perkins Estate, the facts were that Perkins, a partner in a firm composed of himself and another, paid partnership debts for the firm to the exent of more than $7000, and his estate held a claim against the partnership for that amount. The court held that this claim was subordinate to that of other firm creditors, saying:

" 'While a firm member may possibly be a creditor of his firm, he can only be what we may style a secondary creditor; that is, however unequally the members of a firm may have contributed to the firm's assets, and however much the firm may be owing any member thereof on account of such excess contributions, no firm member can take anything from an insolvent firm's estate in process of liquidation until after all of the general firm's debts have been satisfied.' This proposition, quoted from the brief of appellant, is fully sustained by the authorities. Lyons v. Murray, 95 Mo., 23, 8 S. W., 170, 6 Am. St. Rep., 17; Ross v. Carson, 32 Mo. App., 148; Funk v. Seehorn, 99 Mo. App., 598, 74 S. W., 445; 22 Am. & Eng. Encyc. of Law (2d Ed.) 195; 30 Cyc., 542.

"In Lyons v. Murray, supra, the Supreme Court say: 'The plaintiffs insist that, where one partner voluntarily pays debts of the firm with his individual means, he thereby becomes a creditor of the firm for the amount thus paid, and is entitled to be subrogated to all of the rights of the creditors whose debts he paid, and hence, in equity, the $8,972 was the money of Murray. But under our law a partnership debt is joint and several. Murray was bound, individually, for the payment of these partnership debts held by Luce, and his individual property could have been taken on executions therefor, and this, too, though the partnership was dissolved and in liquidation by reason of the death of Van Horn. When Murray paid these partnership debts, he did not stand in the shoes of the creditors. He could not, with these debts paid by him, come in competition with the other firm creditors. He had the right, however, to bring these payments into his accounts, and after the payment of the other partnership debts the amounts thus paid by him would go to his credit in a settlement as between the partners. Neither he nor his individual creditors could demand more than his proportionate share of the residue on a balance and settlement of the accounts as between the partners.'

"In paying debts for which he was separately as well as jointly liable, Perkins merely did what his obligation to the firm creditors compelled him to do. He did not purchase their demands and thereby become subrogated to their rights and remedies against the partnership, but he paid his own as well as his firm's debts, and thereby canceled all rights of such creditors. In paying out of his own pocket debts of the partnership, which, as between him and his partners, should have been paid by the firm, he acquired a valid demand against his partners which should be paid out of the partnership estate for distribution among the partners. Such estate consists only of what remains after the partnership creditors are fully satisfied. To allow a partner creditor to participate with the general creditors of an insolvent partnership estate would be at variance with the fundamental rule that the obligation of the members of a partnership to its creditors is joint and several and not merely joint." 148 S. W., 972–973.

In the case of Babb v. Reed, supra, an association held to be a partnership became indebted to several lien claimants, among whom were some who were members of the association, who held materialman's and laborer's liens. The Supreme Court of Pennsylvania held that the liens and debts of the member claimants were subordinate to those of the others, saying:

"It is possible that persons jointly owning lots of ground, and erecting buildings upon them, to which they furnish work and materials, may file liens under the acts of assembly, and maintain them among themselves, on the ground that they are in *equali jure,* and to be considered as mutually waiving objections. But that a person can enforce a lien on his own building, at the expense of third persons who hold similar liens on it for debts contracted by the former to the latter, is not reconcilable with law or equity. At law the lien of the owner would merge in the property, since no man can be both debtor and creditor; and equity would not uphold it in order to place in the hands of the owner himself, a portion of that fund which ought to go to his creditor, whose debt was contracted on the faith of the fund.

"We are, therefore, of opinion that the debts of Everhart and of the firm of Davis & Jones, who were not members of the association, ought to be first paid out of the fund, before any part of it can be appropriated to the claimants who were members: and as there is not money sufficient to pay Everhart and Davis & Jones in full, it must be distributed between them, in proportion to their respective debts."

In Bates on Partnership, cited above, the text reads:

"The same rules apply when the partner receives instead of giving a mortgage upon an interest. Thus, a mortgage to one partner on partnership property to secure a return to him of his capital puts him in no better position than before, for, as against co-partners, he already has a lien, and as to creditors the mortgage is not available." Bates on Partnership, sec. 188.

We find it unnecessary to discuss the reasons for making claims of partners against the partnership estate secondary, since the rule is very generally accepted, and the reasons therefor are well stated in the authorities cited and quoted.

The application of the rule in this case results in the subordination of the laborer's lien awarded Bateman to both the mortgage and materialman's lien of the Wagner Supply Company, and these liens should have been foreclosed and given priority over Bateman's lien.

The Court of Civil Appeals correctly disposed of the receivership costs, and upon another trial the District Court should enter its decree accordingly.

For the errors shown, the judgments of the District Court and Court of Civil Appeals are reversed and the cause remanded to the District Court as to the issues made between the Wagner Supply Company and Bateman for trial in accordance with this opinion. In all other respects the judgment of the Court of Civil Appeals is affirmed.

*Affirmed in part and in part reversed and remanded.*