## DIVINE v. LEVY et al.

### No. 365.

District Court, W. D. Louisiana, Shreveport Division.

Dec. 13, 1940.

LeRoy Smallenberger, of Shreveport, La., for plaintiff.

Blanchard, Goldstein, Walker & O'Quin, Elias Goldstein and Leon O'Quin, all of Shreveport, La., for defendants Ben Levy and others.

Barksdale, Bullock, Clark & Van Hook, of Shreveport, La., for defendant W. D. Chew, Jr.

Edward S. Klein, of Shreveport, La., for defendants Jay Weil and Harry Weil.

PORTERIE, Judge.

Lacy Divine, a common laborer, became employed in the erection of the drilling rigs for, then continued to work as a roughneck in, the exploitation of oil through the boring of two wells under two leases, known as Levee Board No. 1 and Levee Board No. 2. He began work on March 13, 1939, and continued to October 1, 1939, at the agreed pay of $40 per month with a free house estimated to be worth $11 per month, a total of $51 per month; then, from October 1, 1939, to January 1, 1940, he worked at $50 per month with the free house, or for a total of $61 per month; then from January 1, 1940, to March 15, 1940, and again from May 8, 1940, to June 15, 1940, he worked for a wage of $60 per month with the same house, or for a total of $71 per month. He was discharged on June 15, 1940, after having been fully paid this stipulated wage.

Plaintiff alleges that the oil produced at the wells was piped to the gathering lines of the Standard Oil Co. of La., Inc., to be then distributed in interstate and foreign commerce. He must have heard of the Fair Labor Standards Act of 1938, for on June 19, 1940, he appeared in person at the usual place where he had received payment previously, making claim for the deficiency due him, represented by that which the Fair Labor Standards Act allowed him as a minimum wage less that which he had been paid under the actual terms of employment. He was refused payment.

He enters this court under the authority of the Fair Labor Standards Act of 1938, Public No. 718, 75th Congress, 52 Stat. 1060, 29 U.S.C.A. §§ 201–219, making eight persons and one corporation defendants to his civil action and seeking judgment, individually and in solido, in the sum of $2,837.40, the aggregate of the various items of deficient compensation, calculated under the minimum requirements of the Act, and in the additional sum of $2,837.40 as liquidated damages provided under the Act, and for reasonable attorney's fees to be fixed by the court. He makes additional prayer for the continuous payment of $69.30 per week from June 19, 1940, until eventually paid, basing this latter item on the provisions of Act 150 of 1920, as amended by Act 138 of 1936, of the state of Louisiana, because, as alleged, under this Louisiana statute a continuous penalty accrues against the employer when immediate payment of a laborer's wage be not made upon demand.

For brevity we shall omit the names of the nine defendants and the determination of their respective legal relation to the issue, as further discussion will furnish this information.

The case is before the court not on its merits, but has been submitted and briefed upon various items of pleading permitted under the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, and these pleadings, in their form and legal significance, will be left for the body of the opinion to develop.

### A. Jurisdiction.

All defendants, except W. D. Chew, Jr., and the Leonard Company, have filed a plea alleging want of jurisdiction in this court of the subject matter.

"The Federal District Courts have jurisdiction of all suits arising under laws regulating interstate commerce, regardless of the citizenship of the parties or the sum or value in controversy. Section 24, subsections (1) and (8) of the Judicial Code, Title 28 U.S.C.A. § 41, subsections (1) and (8)." Fishman v. Marcouse, D.C., 32 F.Supp. 460, 462. See Mulford v. Smith, 307 U.S. 38, 59 S.Ct. 648, 83 L.Ed. 1092, the real source of authority for decision. "The Fair Labor Standards Act of 1938 is a law of the United States regulating commerce and the instant case is a suit or proceeding under that law. I therefore find that this Court has jurisdiction regardless of the citizenship of the parties and the amount involved." Fishman v. Marcouse, supra, 32 F.Supp. at 462. See, also, Campbell v. Superior Decalcominia Co., Inc., D.C., 31 F.Supp. 663; Lengel v. Newark Newsdealers Supply Co., D.C., 32 F.Supp. 567.

We are indebted to counsel for one of the movers for the above authorities as, in his brief, he abandons quite frankly his plea. Jurisdiction, therefore, is sustained; the plea is overruled.

### B. Motion to Strike Paragraphs 22 and 23.

All defendants, except W. D. Chew, Jr., and the Leonard Co., have filed a motion to strike two paragraphs of the petition, wherein the provisions of La. Act 150 of 1920, as amended by La. Act 138 of 1936, are invoked, with the purpose of casting the several defendants continuously, until once paid, for the salary of $69.30 per week, because plaintiff, upon making demand upon Ben Levy, one of the defendants, on June 19, 1940, at the usual place for payment of his weekly salary, was not paid and has not been tendered payment since.

Plaintiff discloses by his petition that he was paid the amount due under the terms of his employment; that is, under the contract made by him with his employer. The amount of $69.30 per week which he demanded after his discharge is the amount allegedly due him under the minimum requirements of the Act.

From a reading of Section 18 of the Fair Labor Standards Act, 29 U.S.C.A. § 218, we believe it to be the clearly-expressed intention of the Act not to lower any of the labor standards existing in the

several states, when they happen to be higher than the minimum standards established by the Act for all of the states. The section refers only to minimum wage, maximum workweek, and child-labor; it is silent as to penalty provisions. Therefore, we should assume that the act of Congress, through this section, by implication, supersedes the penalty provisions of the various state statutes on the relation of employer and employee.

Under § 216(b), we find the penalties under civil liability fixed by the Act to be "the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, *and in an additional equal amount as liquidated damages.*" (Italics ours.) Also, at the end of the section, it is provided as follows: "The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."

The plaintiff has entered court under the Federal act, seeking for himself all of its advantages. Should he be benefited additionally with whatever penalties the Louisiana statute may accord him? We answer in the negative.

The Louisiana statute antedates the Federal act and, in part, reads, as follows: "* * * within twenty-four hours after such discharge or resignation, to pay the laborer or employee *the amount due under the terms of employment* whether said employment is by the day, week or month, upon demand being made by the said discharged or resigned laborer or employee, upon his employer, at the place where said employee or laborer is usually paid." (Italics supplied.) It provides in the penalty section, as follows: "* * * shall be liable to the said laborer or other employee for his full wages from the time of such demand for payment by the discharged or resigned laborer or employee, until the said person, firm, or corporation shall pay or tender payment of the amount due to such laborer or other employee." The section then makes provision for reasonable attorney's fees. The legislature did not and could not anticipate the Federal act, which has its own penalty—the double of the amount due as liquidated damages.

Even though the penalties of both the state and federal statutes could be imposed without there being a direct conflict, we believe the penalty provision of the Federal act, when invoked, becomes exclusive and the penalty provisions of the state statute may not be applied. There may be no exact conflict in actual application of the two penalties, but, nevertheless, they conflict in essence because of duplicity. The Congress measured the penalty by the exactions of the Act (minimum wage, maximum hours, etc.) and no other than the specified penalties are to be imposed.

The Fair Labor Standards Act has been validated as to constitutionality, as a valid exercise of power to regulate interstate commerce. Opp Cotton Mills v. Administrator of Wage, etc., 5 Cir., 1940, 111 F.2d 23; Jacobs v. Peavy-Wilson Lbr. Co., D.C.La.1940, 33 F.Supp. 206. Section 2 of the Act, 29 U.S.C.A. § 202, containing the Congressional finding and the declaration of policy gives interstate commerce as the ground for enactment. It is admitted that plaintiff was employed in interstate commerce; because of that fact the Act comes to his succor; the benefits coming to him thereunder are to the exclusion of those coming to him under a state statute. The state statute is to apply only when the unpaid and discharged laborer has been engaged in intrastate commerce.

■ Putting aside all of the above discussion and restricting our consideration to the state statute and to its provisions, we find that "the amount due under the terms of employment" was paid to the plaintiff. He has no complaint. The additional amount he asked for is what the Federal statute accords him; it never was a part of his "terms of employment."

The courts of Louisiana have applied the statute with moderation, giving it a strict construction as against the claims of the employee. See Whitehead v. E. J. Deas Co., Inc., 9 La.App. 47, 118 So. 856; Hazel v. Robinson & Young et al., 187 La. 51, 174 So. 105, and cases cited thereunder.

The motion to strike paragraphs 22 and 23 of the petition is sustained.

### C. Motion for Summary Judgment.

■ This pleading is filed by the Leonard Company, Albert F. Crider and W. D. Chew, Jr., on the ground that the petition and the affidavits filed by each in support of the motion disclose that the

legal relation of movers to the wells and the property where plaintiff labored was as in ownership of an overriding royalty. Each of the movers was to receive a fractional part of the oil produced, in kind, "free of any cost or expense of operation." It was proved that none of them ever had anything to do with the employment of plaintiff, directly or indirectly; none was concerned or interested with who worked, when or how he worked, or when he was paid. None knew even the names of those who worked on the wells. All responsibility for the drilling and the operation of the wells is, by agreement, left with those with whom movers dealt. The movers were divested of all right whatsoever to drill or operate the wells, to direct or to influence the employ of anyone. They are in the same legal status as the original lessor. We do recognize that an overriding royalty owner is not exactly in the same category as the original royalty holder, but in the decision to be made here, as to whether or not the relation of employer and employee exists, the difference is immaterial. Cf. Wagner Supply Co. v. Bateman, 118 Tex. 498, 18 S.W. 2d 1052; Hill v. Roberts, Tex.Civ.App., 284 S.W. 246.

Under Section 3(d) of the Act, 29 U.S. C.A. § 203(d), we find: "'Employer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee but shall not include the United States or any State or political subdivision of a State, or any labor organization (other than when acting as an employer), or anyone acting in the capacity of officer or agent of such labor organization."

The court cannot see the relation of employer and employee existing under the circumstances of this case. And more, as there is no genuine issue as to any material fact, we must grant the motion for a summary judgment as to the above-named movers. Rule 12(b); Rule 56(b), (d) and (e), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

The plaintiff very properly points out that the facts of the legal situation of one of the movers, to-wit, Albert F. Crider, is different from that of his co-movers. It is true that Crider bought from Ben Levy and August Goldstein, the active managers of the partnership which operates the lease, and the character of his purchase is 5% of the "working interest" of the lease. Plaintiff very appropriately shows that since Levy and Goldstein, without question, have a "working interest" only, that which they assigned to Crider must be 5% of the "working interest" in the well. The inference is that the character of ownership is not changed just because the consideration to be received by Crider is a so-called "overriding royalty" of 5% of 13/16ths of the oil produced, free of any cost of production.

Though we grant the above reasoning to be true, (a) by the application of the definition of the term "employer" from the Act to the facts of this case, (b) through the consideration that Crider has never employed the plaintiff and had nothing to do whatsoever with the employment of plaintiff, (c) by the weight of the fact that Crider is not a partner or associate of any person who has employed the plaintiff, we cannot overrule Crider's motion for a summary judgment. We sense and appreciate the differentiation, but still he is definitely not in the relation of an "employer" of the plaintiff.

We believe the definition in 20 C.J. at page 1244 is in support: "Employer. The term is the correlative of 'employee', and is defined as one who employs; one who engages or keeps in service; one who uses or engages the services of other persons for pay; a person who has another in his employ to do certain things in a regular and successive way; a person or corporation employing workmen."

Though fundamental legal rights may not be sacrificed, courts, for practical expediency, in passing on two-sided questions sensitively balanced one way or the other, should concern themselves, especially when a live commercial matter be involved, as to how the decision may help or hinder accepted business practices. We have referred to the law of Oil and Gas by W. L. Summers, Permanent Edition, Vol. 3, § 556, at page 327, and find the following language: "Frequently, persons of limited means, attracted to potential oil fields by the lure of prospective wealth, secure leases which they cannot develop because of lack of capital. In order to develop the leases, these independent operators, unable or unwilling to borrow upon their general credit, find it desirable or necessary to sell or assign as security a

portion of their interest. Such assignments usually purport to convey a fraction or a per cent. of all the oil, gas, and other minerals produced from the land, or to assign a certain sum of money payable out of a fraction or a per cent. of the first oil or gas produced."

We understand that if an overriding royalty were to be kept burdened with vexatious labor claims, no one would care to pay for it, as is done, substantial lump sums of money. This money goes to develop the well and to determine whether or not there is any oil on the property, and is the only available source of help for the small and independent owner of a lease. The ruling on the motion for summary judgment tends to promote and continue the independent exploitation for oil as distinguished from that exploitation made by the major companies, which companies maintain amply financed departments for the purpose.

Judgment will be signed upon presentation in accordance with the above opinion.