## BROWN v. CARTER DRILLING CO.
### Civil Action No. 391.

District Court, S. D. Texas,
Houston Division.
April 26, 1941.

Gollob & Gollob and Leon C. Levy, all of Houston, Tex., for plaintiff.

H. F. Montgomery and Geo. C. Gaines, Jr., both of Houston, Tex., for defendant.

KENNERLY, District Judge.

This is a suit by plaintiff against defendant, by whom plaintiff was employed, for alleged unpaid overtime compensation, damages, and attorney's fees under the Fair Labor Standards Act of 1938, Sections 201 to 219, Title 29, U.S.C.A.

(a) The facts have been in part stipulated as follows:

"Plaintiff and Defendant, by their respective counsel of record, agree that the following statement of .facts may be treated and accepted by the Court as uncontroverted facts proven in the cause:

"I. George O. Brown, Plaintiff, is a resident of Barbers Hill, Chambers County, Texas. Carter Drilling Company is a Texas corporation with its principal office at Houston, in Harris County, Texas.

"II. That Plaintiff, George O. Brown, is a man about sixty-three years of age, and was employed by Carter Drilling Company, Defendant, for fifty consecutive days beginning on January 23, 1939 and ending on March 13th, 1939. That Plaintiff had not been employed previously by Defendant, nor has he been employed at any subsequent time by Defendant.

"III. That Defendant is a private corporation engaged in the business, (as contractor and using its own machinery and equipment and laborers) of drilling wells under written contract for others in search of crude oil or petroleum and/or gas, and was so engaged at all times pertinent to Plaintiff's suit.

"That in the conduct of Defendant's business at all times pertinent to Plaintiff's suit herein, it owned and operated approximately five drilling rigs, each of such drilling rigs consisting of machinery, pumps, appliances, boilers, drill stem, pipe fittings, connections, bits, tools and other apparatus used, and' constituting the entire drilling equipment necessary in the drilling of wells in search of oil and gas and. each of which drilling rigs are of substantial value.

"That such drilling rigs constituted the drilling equipment used by Defendant in the drilling of wells in search of crude oil and gas in the conduct of its business.

"IV. That on or about December 29, 1938, Defendant completed as a commercial producer of petroleum, a certain well known as Gillespie No. 2 (Lawrence B. No. 3.) well.

"V. Defendant, on or about December 29, 1938, immediately upon completing the aforesaid Gillespie No. 2 as a commercial producer, shut down its drilling rig and dismissed its drilling crews. It employed other watchmen for such drilling rig, who worked until January 23, 1939, when Defendant employed Plaintiff as a watchman on said drilling rig.

"That as such watchman, Plaintiff's duties were those usual and customary for a watchman, requiring him to watch such drilling rig equipment and so far as expedient to protect it from the elements and from theft, pilferage and other damage, and that Plaintiff performed such duties. That parts of such drilling rig were, on various occasions during the period of Plaintiff's employment, removed by truck operators acting under authority from Defendant, and on one occasion, Defendant sent trucks to such lease where the operators thereof loaded portions of the drill stem of such rig and moved the same to a well then being drilled by Defendant near League City in Galveston County, Texas, on which well the drill stem was used. The remaining portions of the drilling rig, tools, etc., were moved to a location near Francitas in Jackson County, Texas, on or about March 13, 1939 and thereafter Defendant proceeded to drill a well in search for oil and gas with such drilling equipment.

"A bunk house was provided on the premises by Defendant and Plaintiff used this bunk house for his sleeping quarters.

"VI. That from the period of January 23, 1939 through January 31, 1939, the wages agreed to be paid and actually paid was the sum of $6.50 per day, and that the wages agreed to be paid and actually received by Plaintiff during the remaining forty-one days of his employment was the sum of $5.00 per day.

"VII. That Defendant, as such contractor, pursuant to the custom of the business, is paid for the drilling of a well either on a footage basis or a lump sum basis, regardless of whether its drilling results in the completion of an oil well or a gas well or a dry hole. All wells drilled by Defendant are under contract with others and the drilling of one well does not always follow another in any regular order or sequence because it is dependent upon the making of contracts and hence Defendant's drilling rigs are shut down for indefinite periods between wells, ranging from days to weeks and, not infrequently, months, during which time watchmen are required on said rigs. However, the drilling rig in question was moved on or about March 13, 1939 to Francitas in Jackson County, Texas, where it was promptly set up on location and a well drilled by it which well was completed as a gas well."

(b) The disposition of the oil produced from the well known as Gillespie No. 2 (Lawrence B. No. 3) by the owners of such well is shown by letter from the Sun Oil Company to counsel for plaintiff, dated February 7, 1941, as follows:

"We are today in receipt of a written authorization to furnish you information which you requested, from F. A. Gillespie & Sons Company, Commerce Building, Houston, Texas, Operators, of the Lawrence B. #3 Well, located on the V. A. Lawrence 75.2 acre tract, Solomon Survey, South Cotton Lake, Chambers County, Texas.

"The oil from this well, as well as from various other wells in the field, is purchased by Sun Oil Company and transported from the field to Sun Station, Jefferson County, Texas, by the Sun Pipe Line Company. The oil from this well is co-mingled at the field with oil from other wells in the field and in adjacent fields. This oil is placed in storage at our tank farm at Sun Station and is ultimately lifted by our tankers and transported to Marcus Hook, Pennsylvania, where it is refined."

(c) It is shown that the next well drilled (at Francitas, Jackson County, Texas) with the rig on which plaintiff was employed as a watchman produced gas or a distillate, and the well was closed down because there was no market for the product. A small quantity of such product was, however, sold to Mauritz & Carroll, of Jackson County, Texas, who in turn sold it to farmers in such county for fuel. No part of it left Texas.

(d) The evidence shows defendant drilled a large number of other wells (see tabulation admitted in evidence).

(e) Paragraph Eight and part of Paragraph Nine and Paragraph Fifteen of Plaintiff's Amended Complaint, filed November 4, 1940, are as follows:

"8. Thereafter, on the 23rd day of January, A. D. 1939, by and through its agents, employee and representative, did employ plaintiff as watchman, to go to the premises in Chambers County, Texas, where the aforesaid 'drilling rig' was located on the site of the well known as the Gillespie #2 (Lawrence B. #3 Well), and to render services to defendant, as watchman of such 'drilling rig' to look to its safety, to prevent its being destroyed, or stolen in whole or in part, and to have full custody and control of such 'drilling rig' and to deliver such 'drilling rig' to such persons only, whom defendant would notify plaintiff it desired such 'drilling rig' or its parts delivered; and plaintiff was then and there informed that his service as such watchman required that plaintiff remain on the premises where such 'drilling rig' was located and render his services to defendant as a watchman of such 'drilling rig' for twenty-four (24) hours during every day and night until his employment terminated.

"9. Plaintiff alleges he immediately entered upon his duties in such employment as watchman, on said January 23rd, 1939, went to the premises where such 'drilling rig' was located and remained there and rendered his services to defendant as watchman of such 'drilling rig', from that date, until plaintiff's employment terminated on March 13th, 1939. * * *

"15. Plaintiff alleges further that on his employment by the defendant on the 23rd day of January, A. D. 1939, he was informed that his wage was Six and no/100 ($6.00) a day and that his time card for each day should be turned in to defendant's timekeeper showing that he worked six (6) hours each day; however, plaintiff was informed and instructed and warned that he must go to the location of the 'drilling

rig' of defendant in Chambers County, Texas, as hereinbefore alleged, and that he must render services as watchman twenty-four (24) hours during each day and night; that he was and should remain on the premises at all times and watch such 'drilling rig' at all times, until the entire 'drilling rig' was dismantled and in its entirety moved to the next drilling location that defendant intended it and its parts to be moved."

Plaintiff's testimony as to the number of hours he was required to work was in line with this allegation. But the weight of the evidence shows that plaintiff was not employed to watch the rig, nor to work, nor to be on the lease where the rig or part of it was located, 24 hours a day, and did not watch the rig, nor work, nor remain on the lease, 24 hours a day. His employment did not cover the period between approximately 7:00 A. M. and 5:00 P. M. of each day, and he was not required to remain on the lease during that period, and in fact was not on the lease much of the time during that period.

(f) Plaintiff has not asked leave to amend under Rule 15b, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

(g) Plaintiff was employed and required to watch the rig, or to work, or be on the lease where the rig or part of the rig was located, only from about an hour before dark to about an hour after daylight each day, or from about 5:00 P. M. to about 7:00 A. M., approximately 14 hours, and was permitted to sleep part of the 14 hours in the bunkhouse on the lease. During the time he slept, he was subject to call or to be awakened to give attention to the rig if necessary, and, therefore, in a sense on duty. There is no evidence that he was ever called or awakened to do so while sleeping. Perhaps one-fifth to one-fourth of the time he did not sleep on the lease at all, but on a nearby lease. This was in violation of his agreement, and I find that he did not actually work 50 days, or 700 hours, but only 35 days, or 490 hours. During the time he slept on the lease, he slept approximately 8 hours, and was awake approximately 6 hours of the 14 hours. He put in no time in excess of the 14 hours per day. He turned in his time and reported to defendant each week as working 6 hours, which was approximately the time he was awake, but, as stated, he was employed to work (and sleep) 14 hours.

(h) As set forth in Paragraph VI of the Stipulation of Facts, plaintiff was to be paid, and was paid, first $6.50 per day, and later $5 per day. This was for a day of 14 hours, and not at so much per hour, and not for a day longer or shorter than 14 hours.

(i) There is no evidence upon which I can make or base a finding of a reasonable attorney's fees. If I may find same without evidence, I would say that under all the circumstances of this case, $100 would be ample and fair.

1. Plaintiff insists that the Fair Labor Standards Act of 1938 should be liberally construed. An Act of Congress which prohibits the making of contracts of employment between an employer and employee, except in accordance with such Act, and which imposes heavy and severe penalties in the way of damages on the employer for violation of such Act, and permits the employee to have and recover such penalties, it may be should be liberally construed, but I doubt it. Certainly the evidence offered by an employee such as is plaintiff who has long since received and accepted without protest the pay called for in his contract of employment, and who after long delay, and without any reasonable explanation of the delay, sues to recover compensation for overtime and penalties, should be convincing, both as to whether such employee is working in commerce and as to the terms of his employment.

2. Many cases are cited in the briefs. This case, however, differs materially from the cited cases, in that defendant is not a producing company, but a drilling company, drilling wells under contract at so much per well, some of which produce and some of which do not produce. Plaintiff was not employed to help in drilling wells, nor as a watchman during the drilling of wells, nor as a watchman on a productive well, but only as a watchman on an idle drilling rig, or part of an idle drilling rig, between the time defendant finished drilling one well until he was able to find a customer and make a contract to drill, and begin drilling, another well. I am convinced that it was not the intention of Congress to bring an employee such as was plaintiff under the provisions of the Act. This ruling is not in conflict with that of Judge Allred in our Lefevers v. General Export Iron & Metal Company, 36 F.

Supp. 838. The facts there were quite different from the facts here.

3. Defendant contends that since plaintiff bottoms his case upon the allegation that he was employed to work 24 hours per day and has failed in his proof, he may not recover at all. In view of the above ruling, it is not necessary to consider the point.

Judgment for defendant.