## HALL et al. v. WARREN–BRADSHAW DRILLING CO.

### No. 156 Civil.

District Court, N. D. Texas, Amarillo Division.

July 18, 1941.

Scarborough, Yates & Scarborough, of Abilene, Tex., for plaintiffs.

Settle, Monnet & Clammer, of Tulsa, Okl., and Underwood, Johnson, Dooley & Wilson, of Amarillo, Tex., for defendant.

WILSON, District Judge.

The eight plaintiffs here sue the defendant for overtime under the Fair Labor Standards Act, Title 29, U.S.C.A. § 201 et seq. They constituted a rotary drilling crew in drilling oil wells in the Panhandle Oil Field of Texas, or, as defendant put it, holes in the ground, for the defendant. All of them drew rather good wages ranging from around $6.50 to $7 and up to as high as $11 per day for their work. As a practical matter, in the drilling of these oil wells, the defendant used rotary rigs for drilling the wells down to, or near to, the pay sand. At that juncture, the rotary crews would cement the casing at or near the expected pay sand, and then would withdraw all the rotary machinery and another crew would move in and complete the well, bring it in, or demonstrate it was a dry hole, with cable tools. In other words, plaintiffs here did not do the whole job, but it was finished by the cable tools crew. That is true with respect to every well on which the plaintiffs worked that is involved in this suit. As far as the record shows, all of the wells upon which plaintiffs worked were producers of oil or gas in paying quantities. The defendant was not the owner of any of the leases worked upon.

It was simply under contract for such owners to drill the wells. It had nothing whatever to do with the wells, or holes in the ground, other than above indicated. When it finished such work, it would move to another location and commence another well, and so on. There were around thirty wells drilled by it upon which plaintiffs worked.

Defendant's first position is that plaintiffs were employed by it as a contract driller, and performing such labor for it did not come under the terms of the Act. In other words, that because of defendant's position as an independent contractor, it was not engaged in interstate commerce in so working these men and the law was not applicable to it, etc. I cannot agree with that position. I am not able to see how the stated capacity in which the employer was engaged can affect the question as to whether these plaintiffs were engaged in producing goods for commerce under the Act. As relates to the applicability of the law, I am not able to distinguish between a contractor performing the work, and the owner of the lease himself performing it. It is the character of work done and engaged in by these plaintiffs for defendant. that determines whether they come under the terms of the Act, and whether its provisions as to maximum hours and minimum wages apply. I hold against the defendant's contention in this regard.

The defendant's second contention is that the law is not applicable to these plaintiffs who drilled with a rotary rig for the reason they did not complete the wells, in other words, as indicated heretofore, because the wells were completed by a cable tools crew. I am not able to see that point either as defendant makes it. That seems to be settled against it on the very face of the statute itself, and by express words of the statute. 29 U.S.C.A. § 203, and § 3 of the Act, deals with its definitions, and (j) of that section in defining the word produced, says: "(j) 'Produced' means produced, manufactured, mined, handled, *or in any other manner worked on in any state;* and for the purposes of this chapter an employee shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, *or in any process or occupation necessary to the production thereof, in any State."* (Italics mine.) It can hardly be contended that plaintiffs in drilling the oil wells in part as they did with the rotary drill were not engaged in a process or occupation necessary to the production of oil in those wells, if any oil was ever to be produced. Plainly under this provision, the law was as applicable to their work as it would be to the cable tools crew that immediately followed them and brought the well in. One was just as necessary as the other, and each crew, of course, was engaged in an occupation necessary to the production of the oil. Suppose the plaintiffs, constituting a crew, or crews, when they had cemented the casing at or near the pay sand, had merely withdrawn their rotary tools and moved in cable tools, and themselves had continued and completed the work to a producing well. Under this statute, could their work while engaged with the rotary tools be distinguished from their work while engaged with their cable tools? Obviously not.

Lastly, defendant contends that the evidence is not sufficient to show, under the terms of the Act, that the plaintiffs were working in the production of goods for commerce. As to this, I stand upon my decision in the case of St. John v. Brown et al., D.C., 38 F.Supp. 385.

The defendant also contends that it is not shown that the crude oil, or the gas produced by the work of these plaintiffs, or any percentage of it, or by-products of either, actually moved in interstate commerce. Without elaborating on the evidence introduced as to that issue, I hold that it is amply shown that both the crude oil produced from these wells, or by-products of it, and the gas produced from gas wells worked on by these plaintiffs, or large percentages of same, moved out of Texas into other States of the Union.

For the reasons stated, I hold that the plaintiffs are entitled to recover for the overtime shown by the evidence, and for a formula to be used in working out the rates for overtime, I refer to St. John v. Brown, supra. The judgment will carry with it an attorney's fee of $500 for plaintiffs' attorney. Also liquidated damages for each plaintiff in a sum equal to the individual recovery of each.