## WARREN–BRADSHAW DRILLING CO. v. HALL et al.

### No. 10066.

Circuit Court of Appeals, Fifth Circuit.

Dec. 9, 1941.

W. M. Sutton, of Amarillo, Tex., and Frank Settle, of Tulsa, Okl., for appellant.

Davis Scarborough, of Abilene, Tex., for appellees.

Before HUTCHESON and HOLMES, Circuit Judges, and DAWKINS, District Judge.

HUTCHESON, Circuit Judge.

Another of the growing number of cases brought in this circuit, by employees under Section 16(b),[1] of the Fair Labor Stand-

---

[1] Title 29 U.S.C.A. § 216(b). "Any employer who violates the provisions of section 206 or section 207 of this chapter shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. Action to recover such liability may be maintained in any court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated, or such employee or employees may designate an agent or representative to maintain such

ards Act of 1938, this suit was to recover for overtime pay. The claim in general was that plaintiffs were engaged in the production of goods for commerce within the meaning of Section 3(j),[2] of the Act, and that they had worked overtime hours for which they had not been paid. The claim in particular was that defendant was a drilling contractor engaged in the business of drilling oil wells not for itself, but for others with rotary drilling machinery and equipment; that plaintiffs were members of its drilling crews; and that the oil produced and to be produced from said wells, was intended for and did go into commerce as defined in Section 3(b)[3] of the Act. There were three defenses. One was that defendant and plaintiffs were not engaged in mining or the production, of goods for commerce, because, defendant was a contract driller, having no interest in the oil or its production, and further, the work it and they did with the rotary drilling rig ceased short of the oil producing horizon, the wells were thereafter drilled in to the horizon and the oil produced with other machinery and equipment. A second defense was that the oil produced did not go into "commerce". Its third defense was: That plaintiffs worked on each well in question as a new job and new employment without any express agreement as to their hourly rate of pay but with the expectation of working eight hours each day, seven days per week, until the rotary drilling on the well should be completed; that there was an implied agreement between the parties that the pay they should receive for the work during the period of the job, should include pay for overtime in compliance with the Fair Labor Standards Act; that the payment received and accepted by plaintiffs was based on such implied agreement; and that the amount being more than sufficient to cover the minimum of straight and overtime wage requirements of the act, defendant is not liable to them.

Plaintiffs' testimony established: That they operated rotary drilling tools; that the last thing they did on each well was to set the pipe in the well and then pull the tools; that when they got down to a certain point before they reached the oil producing sand, the casing was set in cement; that they then took out the rotary tools and a new crew came on and drilled the well in. The defendant offered no evidence. The District Judge thus summarized the facts: "The defendant was not the owner of any of the leases worked upon. It was simply under contract for such owners to drill the wells. It had nothing whatever to do with the wells, or holes in the ground, other than above indicated. When it finished such work, it would move to another location and commence another well, and so on, * * *" 40 F.Supp. 272. "As a practical matter, in the drilling of these oil wells, the defendant used rotary rigs for drilling the wells down to, or near to, the pay sand. At that juncture, the rotary crews would cement the casing at or near the expected pay sand, and then would withdraw all the rotary machinery and another crew would move in and complete the well, bring it in, or demonstrate it was a dry hole, with cable tools. In other words, plaintiffs here did not do the whole job, but it was finished by the cable tools crew. That is true with respect to every well on which the plaintiffs worked that is involved in this suit. * * *." 40 F.Supp. 272.

Concluding: That the oil produced and to be produced from the wells plaintiffs worked on, was intended to and did move in "commerce"; that plaintiffs were engaged in the production of goods for commerce; and that they had worked overtime without being paid one and a half times their regular rate for doing so; he gave plaintiffs judgment.

Appellants here contesting these conclusions, present these points: (1) That

---

action for and in behalf of all employees similarly situated. The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."

[2] Title 29, U.S.C.A. § 203(j). "'Produced' means produced, manufactured, mined, handled, or in any other manner worked on in any State; and for the purposes of this chapter an employee

shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, or in any process or occupation necessary to the production thereof, in any State."

[3] Title 29 U.S.C.A. § 203(b). "'Commerce' means trade, commerce, transportation, transmission, or communication among the several States or from any State to any place outside thereof."

workmen engaged in operating a rotary drilling rig as employees of a drilling contractor engaged in drilling wells for others under contract where neither the employer nor employee produced any oil or had any interest in oil that might be thereafter produced are not engaged in the production of goods for commerce within the meaning of the Fair Labor Standards Act of 1938; (2) that plaintiffs did not prove that the oil that might be and that was produced from the wells in question was intended to move and did move in interstate commerce; and (3) that upon the evidence that plaintiffs merely joined themselves to a rotary drilling crew on each well without any express agreement as to wages, and worked eight hours each day, seven days each week, until the rotary drilling on that well was finished, and that the payment he received was in each instance more than sufficient to provide the minimum wage, straight and overtime, required by the Fair Labor Standards Act, it must be held that there was an implied agreement that the wages each was to be paid covered overtime under the act that he is not entitled to recover.

■ We cannot agree with appellant on any of its points. The operator of the rotary drilling rig and the members of his crew, if not engaged in mining for and the production of oil, within the meaning of the act, as actually mining and producing the oil, and we think they were, were certainly engaged in processes or occupations necessary to the production of oil. In the practical operation of the oil business, no one would accept the view that rotary drilling is not a part of the production of oil and that rotary drilling crews are not a part of the field forces actually engaged in its production. Only by the sheerest quibbling could they be excluded from the operation of laws covering such field forces. It must be conceded: That some operations in the oil business as a whole, and some even in preparation for production, are neither operations in the production of oil, nor processes or occupations necessary for the production thereof; and that an extreme construction of the act, bringing all operation in the oil industry under it, would produce a reductio ad absurdum. But this is no argument at all against the conclusion to be drawn here from the undisputed facts that appellant and its employees are engaged generally in mining for and the

production of oil in this state, and specifically in a process or occupation the handling of a rotary drilling equipment necessary to the production of oil here. The cases appellant cites are not in conflict with this conclusion, while the numerous decisions cited in the opposing briefs, clearly and fully support this view.

■ Nor does appellant stand any better on its second point that plaintiffs failed to prove that the oil was intended to move and did move in commerce. It is sufficient without setting it out, to say that the proof, on that score, was abundant.

■ In presenting and arguing its third point, that the pay plaintiffs received, must, because taken as a whole it exceeds the statutory minimum, be held to include overtime, defendant completely misconceives the statute and the construction given it by this court in Fleming v. A. H. Belo Corp., 5 Cir., 121 F.2d 207. The statute does not support, it was not there held that it did support, the view here advanced, that merely because the amount paid an employee exceeds the minimum straight and overtime pay required by the act, an employer may defend against a suit for overtime. What the statute in effect provides, and what this court has held, is: That overtime must be compensated for at one and one-half times the regular rate at which the wage earner is employed; that that rate may be fixed by agreement; and that if there is no agreement fixing the amount to be paid for regular and overtime work, the regular rate, as to it, may properly be determined by dividing the total pay each week by the total hours worked.

■ It is clear that plaintiffs performed their work for the company under no express agreement, fixing their regular rate and agreeing that the pay received each week should cover overtime. It is equally clear that they worked on a straight hourly basis and that it was not agreed or contemplated that any of the amount paid was paid for overtime. If, there could be a case of overtime in wages paid, without an express agreement that overtime was included, and we express no opinion on that, such an agreement certainly cannot be implied here, for such an implication would be in the very teeth of the facts.

Except for the fact that there was error in the allowance to Volgamore, one of the plaintiffs who failed to establish his

case, the judgment would be affirmed as rendered. But there was error to the extent of this allowance. Appellees admit the error and consent to a reformation of the judgment by striking out the amount allowed him rather than having the judgment reversed and the cause sent back for trial. The judgment will therefore be reformed by striking out the allowance to Volgamore and as reformed, it will be affirmed.

Reformed and affirmed.