## PERRY v. GEORGE P. LIVERMORE, Inc.

### No. 5475.

Court of Civil Appeals of Texas. Amarillo.

Oct. 19, 1942.

Rehearing Denied Nov. 9, 1942.

---

Cunningham & Boling, of Lubbock, for appellant.

Cantey, Hanger, McMahon, McKnight & Johnson, J. A. Gooch, and Warren Scarborough, all of Fort Worth, and Crenshaw, Dupree & Milam, of Lubbock, for appellee.

FOLLEY, Justice.

This suit was filed by the appellant, G. F. Perry, against the appellee, George P. Livermore, Inc., seeking to recover unpaid minimum wages, overtime compensation, penalties, and attorneys' fees alleged to have been due him under the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq. At the conclusion of the testimony in a trial before a jury, the trial court peremptorily directed a verdict for the appellee and against the appellant, and rendered judgment accordingly.

The appellee is an oil drilling contractor and, as material here, drilled wells under contract upon three separate leases in West Texas known, respectively, as the Wasson lease, the Moore lease, and the Waples-Platter lease. The appellant was employed by the appellee as a fireman in the drilling of wells on the three leases but his wages therefor were admittedly paid and are not involved in this suit. He was also employed between drillings as a watchman on the Wasson and Moore leases and later as a pumper and watchman on the Waples-Platter lease. These latter services, which were rendered between December 11, 1939, and December 24, 1940, furnish the basis for this suit. These services were performed under an agreed wage scale between the parties and there is no contention made that the appellant did not receive the wages agreed upon, but, notwithstanding such agreement and its specific performance, the appellant now claims certain additional sums are due him for overtime compensation under his interpretation of the Fair Labor Standards Act.

All of the wells on the three leases were producers but at the time of the drilling the appellee owned no interest therein, but merely drilled under contract for the owners. However, after the well on the Waples-Platter lease was brought in, the appellee acquired the lease and thus became the owner of the well. During the time the appellant was fireman on the three leases he was paid about 85 cents an hour for the hours he actually worked and time and a half for all overtime in excess of the maximum hours allowed for the workweek under the Fair Labor Standards Act, and there is no controversy relative to his wages as a fireman. The claim of the appellant is based upon his services as a watchman on the Wasson and Moore leases while the oil rigs thereon were not running and for similar services on the Waples-Platter lease where he was engaged in pumping the well thereon for some four or five hours each day.

It appears that on the Wasson and Moore leases the appellant's principal duties were to live in a trailer-house near the idle or stacked rigs of the appellee on the respective leases where appellant resided with his wife. For this service he was paid at the rate of 85 cents an hour and time and a half for overtime on the basis of eight hours per day, the schedule of payment being $6.80 for each day from Monday through Thursday, $9.35 on Friday, and $10.20 on Saturday. Other than residing on these leases in the trailer-house adjacent to appellee's idle machinery, the only duty claimed to have been performed by the appellant was draining the water out of the rig in cold weather. On the Waples-Platter lease the appellant was also required to live in his trailer-house near the producing well, and, in addition thereto, he was required to operate the pump which produced about 38 barrels of oil per day, the amount allowable under the Texas

proration laws. In producing this oil from the well, the appellant admitted he was employed only four or five hours each day. Other than this labor as pumper, appellant performed no duties on the Waples-Platter lease except to pick up trash about the premises and the amount of time spent in this pursuit was apparently so infinitesimal the appellant was unable to specify it in his testimony. For his services on the Waples-Platter lease, after the well was completed and while he was pumper and residing on the premises, the appellant was paid the sum of $140 per month. It was his contention, supported by his testimony, that he was required to remain on the premises for 24 hours each day and that when he left, his wife was required to remain on the premises, and when they both left, he was required to get some third person to stay there and watch the machinery. The purpose of such vigil, according to the appellant, was to "see that the rig was not bothered." It is conceded that the appellant accepted each of the watching jobs. upon an agreement that he would receive the wages actually paid to him and no more, and that he made no claim for additional wages until the filing of this suit in September 1941.

The appellant presents but one contention which is to the effect that the court erred in instructing a verdict against him, because, he asserts, he had made out a prima facie case under the Fair Labor Standards Act of 1938, which assertion, if true, is sufficient to require a reversal.

In defense of the trial court's action, the appellee insists that it was not engaged in interstate commerce and thus would not be subject to the terms of the Act, and further asserts that if it is subject to the Act, the same is not applicable to a watchman on an idle or stacked drilling rig.

■ The appellee's contention that it is not engaged in interstate commerce is based upon the theory that it was only a contract driller in the production of wells. This question at this time seems not to have been fully settled in the federal courts. Hall et al. v. Warren-Bradshaw Drilling Co., D.C., 40 F.Supp. 272; Id., 5 Cir., 124 F.2d 42, writ of certiorari granted by the United States Supreme Court, 316 U.S. 660, 62 S.Ct. 1305, 86 L.Ed. —; Brown v. Carter Drilling Co., D.C., 38 F.Supp. 489; Divine v. Levy et al., D.C., 36 F.Supp. 55; Id., D.C., 39 F.Supp. 44. However, as we view this case, it will not be necessary for us to determine this question. We think there is no doubt that the appellee and the appellant were each engaged in interstate commerce, within the meaning of the Act, at the time the appellant served as pumper and watchman at the producing well on the Waples-Platter lease. Therefore, it would have been improper for the trial court to have directed a verdict against the appellant if he had made out only a prima facie case for unpaid wages and overtime compensation for his services as pumper and watchman at this well. We shall thus deal with this question upon the assumption that the appellee, at all times here material, was subject to the terms of the Act, although we recognize the fact that Judge Kennerly, in a very able opinion in the Brown case, supra, has held that a watchman of an idle oil well drilling rig, who accepted without protest the pay called for in his contract of employment, was not within the Fair Labor Standards Act and was not entitled to have the same liberally construed in his favor. However, in our opinion, this question will become immaterial in view of our subsequent holdings that the appellant has not shown himself entitled to any relief even though at all times he was engaged in services coming under the provisions of this Act.

■ We are influenced to a large extent in our conclusions in this respect by the opinion of the Administrator of the Wage and Hour Division of the Department of Labor in his Interpretative Bulletin No. 13, Paragraph 7, 2 Labor Law Service, page 32,402, paragraph 32,113, wherein he stated:

"In some cases employees are engaged in active work for part of the day but because of the nature of the job are also required to be on call for 24 hours a day. Thus, for example, a pumper of a stripper well often resides on the premises of his employer. The pumper engages in oiling the pump each day and doing any other necessary work around the well. In the event that the pump stops (at any time during the day or night) the pumper must start it up again. Similarly, caretakers, custodians, or watchmen of lumber camps during the off season when the camp is closed, live on the premises of the employer, have a regular routine of duty, but are subject to call at any time in the event of an emergency. The fact that the employee makes his home at his employer's place of business in these cases does not

mean that the employee is necessarily working 24 hours a day. In the ordinary course of events the employee has a normal night's sleep, has ample time in which to eat his meals, and has a certain amount of time for relaxation and entirely private pursuits. In some cases the employee may be free to come and go during certain periods. Thus, here again the facts may justify the conclusion that the employee is not working at all times during which he is subject to call in the event of an emergency, and a reasonable computation of working hours in the situation will be accepted by the Division."

It seems that this statement is peculiarly applicable to the facts of the instant case. Upon the Wasson and Moore leases the duty of the appellant was solely to live on the premises adjacent to appellee's stacked machinery, and the only other service claimed to have been rendered by him was the occasional draining of the water from the rig in cold weather. On the Waples-Platter lease he was also required to live on the premises and pump the well, which latter process took no more than four or five hours each day, and it was not shown that he was required to be present at all times during the pumping process, or what time he actually spent in personal attendance or manual labor in this process. As above indicated, he was also required to pick up trash about the premises, but the time spent in this pursuit was not revealed by the testimony. Based upon a liberal and reasonable computation of his actual working hours, it is therefore evident that at no time during his employment here involved did the appellant actually perform personal services for his employer in excess of the maximum hours allowed for his workweek under the Fair Labor Standards Act, unless, perchance, the requirement to reside in his trailer-house upon the premises would violate the terms of the law, which interpretation, we think, would be unreasonable under the facts of this case. In reaching this conclusion, we are not unmindful that there may be circumstances under which an employe would be entitled to be paid for waiting time or watching time, but in each such instance we are confident that more services of a personal nature would be demanded than merely to live on the premises. In harmony with the opinion of the Administrator, as above expressed, we do not think it was contemplated by the Congress that

such an employe as we have in this case should be compensated for the time he spent in sleeping, eating, relaxing, or otherwise engaging in entirely private pursuits, either on or off the premises of his employer. Cordell v. H. F. Wilcox Oil & Gas Co., 5 Labor Cases 60,807. Such being our conclusion, it follows that we think the appellant has failed to prove his case, and the directed verdict was proper.

The judgment is affirmed.